## Owen M. Locke v. David McVean and another.

*Contracts of guaranty: Construction: Intent of the parties.* Contracts of guaranty are to be construed like other contracts, and the intent of the parties, as collected from the whole instrument and the subject matter to which it applies, is to govern.

*Guaranty: Construction; Principal and surety: Guarantor and guarantee.* But when an understanding is once reached of the true agreement, the rules and principles which pertain to the rights and duties of principal and surety apply, so far as appropriate to the form of that relation recognized in the case of guarantor and guarantee, or admissible in view of the nature and terms of the particular transaction.

*Bonds: Written contract: Construction.* A bond given to secure the performance of a written contract is to be construed as if the contract were copied into the preambles of the condition of the bond.

*Guarantor: Promissory notes: Contract: Variance.* One who has become guarantor for such notes of a specified description as another should give in pursuance of a written contract, cannot by virtue thereof be held liable for notes differing materially from those for which the contract provided.

*Guaranty: Promissory notes: Variance: Discharge of guarantor.* Where the contract, the performance of which is guarantied, provides for notes at four months without interest, to be renewed, if desired, for sixty days

LOCKE *v.* MCVEAN.

at eight per cent., the guarantor is not holden for notes running six months, with interest for four months at seven per cent., and thereafter at eight, nor for six months' notes with interest at eight per cent. after four months; the variance is a substantial one, as affecting the rights of a surety.

*Heard January 20.     Decided April 11.*

Error to Oakland Circuit.

*J. E. Sawyer* and *George H. Lothrop,* for plaintiff in error, cited: *Farmers & Mechanics' Bank v. Kercheval,* 2 *Mich.,* 504; *Hunt v. Smith,* 17 *Wend.,* 179; *Dobbin v. Bradley, Ib.,* 422; *Walrath v. Thompson,* 6 *Hill,* 541; *Smith v. Dann, Ib.,* 543; *Salisbury v. Hale,* 12 *Pick.,* 419; *Curtis v. Hubbard,* 6 *Met.,* 191; *Lee v. Dick,* 10 *Pet.,* 493.

*A. C. Baldwin,* for defendants in error, cited: *Milton v. Stewart,* 9 *Wheat.,* 680; *Wright v. Johnson,* 8 *Wend.,* 576; *Walch v. Bailie,* 10 *Johns.,* 180; *Birckhead v. Brown,* 5 *Hill,* 640; *Whitcher v. Hall,* 6 *B. & C.,* 269; *N. H. Savings Bank v. Colcord,* 15 *N. H.,* 122; *Watriss v. Pierce,* 32 *N. H.,* 574; *Bouser v. Cox,* 4 *Beavan,* 379; *Farmers & Mechanics' Bank v. Evans,* 4 *Barb.,* 487; *Bigelow v. Benton,* 14 *Barb.,* 128; *Henderson v. Marvin,* 31 *Barb.,* 299; *Leeds v. Dunn,* 10 *N. Y.,* 469; *Wilson v. Edwards,* 6 *Lans.,* 134; *Bagley v. Clark,* 7 *Bosw.,* 94; *Bangs v. Strong,* 10 *Paige,* 11; *S. C.,* 7 *Hill,* 250; *Miller v. McCann,* 7 *Paige,* 459; *Frank v. Edwards,* 8 *Exch.,* 214; *Holland v. Lee,* 9 *Ib.,* 480; *N. W. R. W. Co. v. Whinway,* 10 *Ib.,* 77; *Stewart v. McKean, Ib.,* 675.

GRAVES, J:

Locke and defendant in error, David McVean, entered into an agreement in writing on the 1st of March, 1871, of the following tenor:

"It is agreed that all sales of sewing machines which O. M. Locke, of Detroit, Mich., shall make to David McVean,

of Lapeer, shall be upon the terms and conditions following, unless it shall be otherwise in writing hereafter agreed, during the continuance of this contract. All indebtedness by account, note or otherwise, which shall arise under this contract from said D. McVean to said O. M. Locke, shall be paid when due.

"*First.* Machines will be packed for transportation and delivered in Detroit by O. M. Locke, after which all expenses of every kind will be paid by said David McVean.

"*Second.* Said David McVean shall reasonably advertise and make all reasonable efforts to sell at prices not less than the regular retail prices of O. M. Locke, and shall introduce, supply and sell said machines as speedily, thoroughly and extensively as practicable throughout said Lapeer county, state of Michigan.

"*Third.* Said D. McVean shall neither keep nor deal in any other sewing machines than the 'Florence,' and shall supply himself, by purchase from O. M. Locke, with needles, threads and findings for said machines, that his customers and the community may be at all times promptly and conveniently supplied; and said needles, thread and findings shall be sold to him by O. M. Locke at the lowest wholesale price to such agents for cash.

"*Fourth.* O. M. Locke will, during the continuance of this agency, sell his machines to said D. McVean at a discount of twenty-five per cent. from the regular retail prices at Detroit.

"*Fifth.* Said D. McVean shall give to every purchaser of a Florence machine full and thorough instructions how to run said machine, and shall forfeit to O. M. Locke all profit or commission on such sale in case of failure or neglect to fulfill the requirements of this clause.

"*Sixth.* So long as said D. McVean shall conduct this business properly, energetically and to the satisfaction of O. M. Locke, no other local agent for the sale of said sewing machines will be established in said territory.

"*Seventh.* Said D. McVean shall give his note of hand

for all purchases of machines, at the time of purchase, said notes to be on four months' time without interest. If so desired, an extension of time will be granted by O. M. Locke, equal to sixty days on each note, said McVean to pay interest therefor at the rate of eight per cent. per annum.

"O. M. Locke agrees to take good notes that said McVean may receive in exchange for machines, provided said notes are payable at bank or express office, bearing interest from date, on not over six months' time and endorsed by D. McVean. If not paid at maturity, said notes are to be returned to said D. McVean. If O. M. Locke shall not be satisfied with the conduct of said business and agency by said D. McVean, he may establish another agent in his stead at pleasure. Said D. McVean may discontinue this agency at pleasure, on notice of thirty days.

"For the more convenient prosecution of this agency, O. M. Locke agrees to furnish said McVean with a wagon, as soon as said McVean shall become satisfied that the territory will pay sufficiently well to justify the expense. Said wagon to be the property of O. M. Locke, and to be returned in as good order as received, 'natural wear excepted,' upon demand of O. M. Locke."

At the time this contract was entered into, a bond was written and executed on the back of it, from the defendant David McVean as principal, and the defendant Daniel McVean and one Alexander McVean, now deceased, as sureties, to the plaintiff Locke, in the penal sum of two thousand dollars, and conditioned that if David McVean should "well and truly keep and perform in all respects, according to its true intent and meaning," the contract in question, then the obligation should be void, otherwise in force.

Subsequently David McVean gave his five several promissory notes to Locke, each payable six months after date, and dated respectively May 17th, May 18th, September 22d, October 2d, and October 7th, in the year 1871, and each, except the second, only drawing interest after four months,

and then at the rate of eight per cent. The second was so worded as upon its face to draw interest at seven per cent. from date for the first four months, and thereafter at eight.

The notes were all given for sewing machines furnished by Locke in the course of the business explained in the contract, and not being paid, Locke sued upon the bond to enforce collection of the surviving surety. When the case came on for trial, there was no dispute about the genuineness of the papers. The only question was whether the bond applied to and covered these notes. The contract and bond were admitted in evidence without objection, but the surety insisted that the notes were not such as he agreed to be liable for; that he only bound himself to be liable for notes given by David McVean to the plaintiff, and drawn payable at four months, whereas the notes offered were drawn payable at six months; and the judge sustained the objection and refused to admit the notes in evidence. The question in the case is upon the correctness of this ruling, and it turns upon the interpretation of the papers. In argument counsel laid down conflicting rules as to the interpretation of guaranties. For the defendants it was contended that the undertaking of the guarantor must be read and applied according to the strict letter or precise terms used to express it, and *Wright v. Johnson, 8 Wend., 512,* and several other cases, were cited.

On the part of plaintiff in error it was claimed that the same principle is to govern which obtains where other contracts are in question, and that the intent of the parties is to be sought for and may be gathered from the whole instrument and the subject matter of the engagement, and *Curtis v. Hubbard, 6 Met., 191,* and *Lee v. Dick, 10 Pet., 493,* were referred to.

Formerly it is certain there was much diversity of opinion on this subject. A number of New York cases were very strongly on the side of construction favorable to the guarantor and such as would reduce his liability within the narrowest limits. *Chancellor Kent* seems to have inclined

to that doctrine.—*Com., Vol. 3, p. 124.* There were likewise some English authorities which favored the same view. But in *Mason v. Pritchard, 12 East, 227,* the court of King's Bench declared that the words were to be taken as strongly against the guarantor as the sense of them would admit of, and in *Merle and others v. Wells, 2 Campb., 413,* Lord *Ellenborough,* at *nisi prius,* acted on the same principle.

In *Hargreave v. Smee, 6 Bing., 244, Tindal, C. J.,* said: "The question is, What is the fair import to be collected from the language used in this guaranty? The words employed are the words of the defendant, the guarantor in this cause, and there is no reason for putting on a guaranty a construction different from that which the court puts on any other instrument. With regard to other instruments the rule is, that if the party executing them leaves any thing ambiguous in his expressions, such ambiguity must be taken most strongly against himself." *Park, J.,* observed, that it had been conceded that all these cases were to be decided each on its own ground; and that it was useless, therefore, to refer to the decisions, except for some principle incidentally laid down; that the only question of principle which had been agitated was, whether these instruments were to be construed strictly, and that he was not disposed to hold the doctrine which had been imputed to *Lord Wynford,* that a guaranty ought to receive a strict construction. *Burrough, J.,* remarked, that he hoped the time would come when more reliance would be placed on principles than on cases; that he had no doubt as to the intention of the parties; that the writings were commercial agreements, and ought to receive a liberal, not a strict construction. In *Wood v. Priestner,* in the Exchequer in 1866, the Chief Baron observed, the question in these cases depends not merely on the words; but, when the words are at all ambiguous, requires a consideration of the circumstances to aid the construction; that it was therefore necessary to look at the existing state of things, and looking to that, to construe the words in such a way

as the court considered most consistent with the intention of the parties; not, indeed, considering any statement of either party as to what he meant by the words used, but taking the words themselves, together with the surrounding facts, as the exponents of the meaning of both. *Martin, B.*, observed, that he could not assent to the remarks of *Bayley, B.*, in *Nicholson v. Paget, 1 Cr. & M., 52,* that a contract of guaranty ought to be read in any peculiar way, and stated that his own opinion was it should be read in the same way as any other contract.

*Bramwell, B.*, also repudiated the opinion of *Bayley, B.*, in *Nicholson v. Paget,* and thought a contract of guaranty should be interpreted in the same way as other contracts. *Pigott, B.*, concurred, and the judgment followed the rule as stated *(L. R., 2 Excheq., 66),* and was affirmed in the Exchequer Chamber.—*Ib., 282.*

In *Burgess v. Eve* the Vice Chancellor remarked, that reason must be applied to the construction of an instrument of guaranty, and in view of the surrounding facts and the expressions, he proceeded to ascertain the import of the engagement by giving what he called a reasonable construction to the terms.—*L. R., 13 Eq. Cases, 450; 2 Eng., 379;* see also *Tanner v. Woolmer, 20 E. L. & E., 491; Northwestern R. W. Co. v. Whinray, 26 E. L. & E., 488; Bainbridge v. Wade, 1 E. L. & E., 236; Rolt v. Cozens, 37 E. L. & E., 261; Broom v. Batchelor, Ib., 572; Mayer v. Isaac, 6 M. & W., 605.*

In *Curtis and another v. Hubbard, 6 Met., 186,* Chief Justice *Shaw* observed, that in construing an instrument of guaranty, as in the case of any other written instrument, the intent of the parties is to govern, as collected from the whole instrument and the subject matter to which it applies.

In *Dobbin v. Bradley, 17 Wend., 422,* in *Gates v. McKee, 3 Ker., 232,* and in *Rindge v. Judson, 24 N. Y., 64,* the true rule was deemed to be, that when the question is as to the meaning of the written language in which a guarantor has contracted, there is no difference between the contract

of a surety and that of any other party, and this seems to be the doctrine as now settled in New York. In the last case many authorities were cited and considered.

The view now generally received appears to be, that for the purpose of finding out what the contract is, the same course is to be pursued that the law authorizes to ascertain what the parties have agreed upon in the case of other mercantile contracts, but that when an understanding is once reached of the true agreement, the rules and principles which pertain to the rights and duties of principal and surety apply, so far as appropriate to the form of that relation recognized in the case of guarantor and guarantee, or admissible in view of the nature and terms of the particular transaction.

This subject has been examined because counsel on both sides appeared to attach importance to it; but according to my impressions the decision of the present case does not depend upon the adoption or rejection of any particular rule which ambiguous arrangements may be supposed to call for.

When the stipulations are plain on their face, so far as they concern the matter in dispute, there is no occasion to spend time about rules.—*Mayer v. Isaac, supra.*

The explicit description of the undertaking of the party can speak for itself, and if the question is, whether a particular matter equally specific is within it, there ought not to be great difficulty in deciding. As he who undertakes cannot be required to assume more than he promised, if the matter he is sought to be charged with is identically different in substance and effect, no nice reasoning is necessary to prove the want of liability of the promisor. And, on the other hand, if what is claimed is identically comprehended by the written description of the undertaking, there would seem to be no room for debate. The transaction here must be viewed as it would be if the contract between the plaintiff and David McVean had been copied into the preamble of the condition of the bond, and proceeding to read the bond in that way and comparing the notes in question with the defendant's undertaking in the obligation, I discover no

ambiguity and find nothing uncertain. The parties contemplated two forms of indebtedness, one by notes given for machines, and the other for needles, thread and findings, for which notes were not expected to be given, and in the commencement of the agreement it was provided that David should pay such indebtedness when due. The notes there referred to were left to be described in a later provision, and in the seventh article we find them described. For every machine David was to give at the time of purchase his note on four months' time without interest, and in case he desired was to have an extension for sixty days, but for the time of the extension there was to be interest at the rate of eight per cent. Of course under this arrangement Locke would be entitled to the specified note on parting with the machine. No other or different notes were provided to be given by David to the plaintiff, and under the contract the plaintiff could not require any other. They would be a specific form of indebtedness, and very distinguishable from one resting upon verbal proof. As notes they could be negotiated and used in business and transferred so as to exclude objection or defense by the maker. The guaranty amounted to an obligation that such notes should be paid when due; but it was not an agreement that any notes which David might give, to run six months or six years, should be paid when due. It was of special interest to the guarantors that the time of running of the notes they were to be liable for should be fixed. If not fixed, then the time in each case would depend on the notions of the immediate parties, who might make it very short or extend it to years, and the guarantors would be always uncertain as to the length of time to which their liability might be carried. Every one must see the difference between becoming bound for all notes one neighbor may give another, on whatever time, and becoming bound for all notes so given having four months to run. It is common experience that men will often become sureties on three or four months' paper when they would not if the paper were drawn at six months.

There are some definite circumstances which mark the difference in the risk, and there is always room for contingencies to enhance the risk.

But the main consideration is, the guarantors only undertook for paper of a specific description, only became bound to stand responsible for four months' notes, and the plaintiff and David had no power to extend the obligation to other securities.

The plaintiff's counsel contends, however, that in view of the clause for an extension on each four months' note for sixty days, the notes in question, though given for six months, were substantially equivalent to four months, extended as authorized.

I do not think so. · Each note was to run four months without interest, and in case of extension, then to carry interest at eight per cent. per annum for the extended time.

As previously stated, the second note in question was worded to draw interest from its date for four months at seven per cent. and thereafter at eight.

Clearly this note was a great ways from being the same as one drawn pursuant to the plan covered by the guaranty, and then extended sixty days. A few figures will explain one marked difference in dollars and cents.

But a short computation and comparison will prove that neither of these notes, in regard to length of time or amount of interest, is in substance the same as if drawn for four months without interest, and extended sixty days with interest at eight per cent. during that period. In every case the time and amount are both greater. Other distinctions may be noticed. The legal right to compel reception of payment and the surrender of the paper is postponed an additional two months, and that excess of time is likewise afforded for transfer before maturity, and these are substantial differences.

Indeed, the variances are too marked to leave room for any serious question—*Russell v. Perkins, 1 Mason, 368; Birckhead v. Brown, 5 Hill, 634; Northwestern R. W. Co.*

*v. Whinray, 26 E. L. & E., 488; Walrath v. Thompson, 6 Hill, 540; S. C. 2 Com., 185; Skinner v. Valentine, 59 N. Y., 473; Hall v. Rand, 8 Conn., 560; Eames v. Carlisle, 4 N. H., 201.*

The judgment should be affirmed, with costs.

The other Justices concurred.