### JOSEPH W. MCNEAL v. ALVIN H. GOSSARD.
#### (Filed July 30, 1897.)

1. PARTNERSHIPS—*Guaranty By—Construction Of.* Contracts of guaranty are to be construed like other contracts and the intent of the parties as collected from the whole instrument and the subject matter to which it applies, is to govern, but when an understanding is once reached of the true agreement, the rules and principles which pertain to the rights and duties of principal and surety, apply so far as is appropriate to the form of that relation recognized in the case of guarantor and guarantee, or admissible in view of the nature and terms of the particular transaction.

2. PROMISSORY NOTE—*Guaranty of Payment.* A written guaranty given to secure the payment of a promissory note already in existence and identified in the instrument of guaranty, is to be construed as if the promissory note were copied into the guaranty, and where the promissory note is made payable three or five years after date and the instrument of guaranty describes it as payable five years after date, such variance between the note and the guaranty will be disregarded, as the clear intent of the parties is deducible from the transaction.

3. GUARANTY BY PARTNER—*When Binding on Firm.* A partner is a general agent with authority to bind his firm by guaranty, where such partnership is a commercial partnership and the giving of such guaranty is necessary in the transaction of business properly within the scope of the partnership. A partnership

doing a general banking business is a commercial partnership. The discounting and re-discounting of commercial paper is within tne scope of the business of a banking firm, and, when necessary to give a guaranty in order to re-discount commercial paper, a partner may bind the firm by such guaranty.

(Syllabus by the Court.)

*Error from the District Court of Logan County; before Frank Dale, District Judge.*

*Herod, Widmer & Overstreet,* for plaintiff in error.

*Cotteral & Hornor* and *Joseph Wisby,* for defendant in error.

On June 21st, 1886, W. W. S. Snoddy, and May M. Snoddy, his wife, executed and delivered a promissory note, in writing, of that date, with ten interest coupons attached thereto, to J. William Kelley, promising to pay three or five years after date, at the option of the maker, the sum of $2,000 with 8 per cent interest per annum, until default, payable semi-annually; and 12 per cent. interest thereon after default, payable semi-annually; and, to secure the payment of the same, executed and delivered to said Kelley, their mortgage upon certain real estate, situated in Barber county, Kansas.

At the date of the making of said note, the plaintiff in error herein, Joseph McNeal, and one A. W. Little, constituted the membership of the banking firm of McNeal, Little & Thompson Banking company, the co-partnership doing a general banking business at Medicine Lodge, Kansas.

On September 2, 1886, said McNeal, Little & Thompson Banking company, being then the owner or in possession and control of said promissory note, with authority to sell and dispose of the same, did, by A. W. Little, one

of the partners in said banking company, and in the name of said banking company, sell and dispose of said note and mortgage to the Gossard Investment company, of Kansas City, Missouri, and did, at the same time, make and deliver to said Gossard Investment company, the following instrument of writing, to-wit:—

"For value received, we hereby guarantee the payment, within one year from due, a certain note for the principal sum of $2,000, made by W. W. S. Snoddy and Mary M. Snoddy, to J. William Kelley, and dated at Medicine Lodge, Kansas, June 21, 1886, and due five years from date; and we further guarantee the payment of the ten interest notes attached to the above described principal note and of the denomination of $80 each, when due. And waive demand and notice of protest on the same when due. Dated this 2nd day of September, 1886, signed McNeal, Little & Thompson Banking Co., Medicine Lodge, Kansas."

Upon the delivery, to-wit, of said note, mortgage and written guaranty, the said Gossard Investment company paid to the said banking company the sum of $1,900, upon a draft drawn by the plaintiff in error, in favor of said banking company; afterwards the Gossard Investment company, sold and delivered said note and mortgage to Aaron P. Kelley, of Boston, Mass., and guaranteed the payment thereof in writing; that eight of said interest coupons attached to said note were paid by the maker thereof when due, but that default was made in the payment of the two other of said coupons and upon the principal sum of said note when the same became due; that suit was brought thereon and for the foreclosure of said mortgage in the circuit court of the United States, for the district of Kansas, by said A. P. Kelley, and recovery was had therein against the makers of said

note, for the sum of $2,552.92 and costs, and a decree ordering a sale of the premises described in the mortgage. Afterwards, defendant in error, A. H. Gossard, purchased said judgment of Kelley and took an assignment thereof, and, on April 25, 1892, the land was sold under the decree and purchased by Gossard for $1,100; and that amount was credited upon the judgment, leaving a balance of $1,734.40 upon said judgment unsatisfied, for which amount, with interest at 12 per cent, from April 25, 1893, the date of the sale of said premises, this action is brought upon said instrument of guaranty.

Opinion of the court by

TARSNEY, J.: The first assignment in error relied upon by plaintiff in error arises upon the action of the court below in overruling a demurrer to the amended petition in the cause, on the grounds that there was a fatal variance between the note and mortgage merged in the judgment and the written guaranty upon which the action was founded.

The note by its terms was made payable three or five years after date at the option of the maker, while the instrument of guaranty described the note as due five years from date. The petition in this cause sought to reform the guaranty so as to make the terms of it conform to the terms of the note and mortgage, and the court, by its decree, so reformed said guaranty. It is contended that a guarantor is a favorite of the law and has a right to stand upon the strict terms of his obligation; that this rule is applicable to every variety of circumstances; that a claim against him is *strictissimmi juris* and his liability is not to be extended beyond the letter of his contract. In other words, that the guaranty in this cause

was of a note by its terms payable five years after date and could not be construed as a guaranty of any note payable at a different time, and that the court below had no power to change the language or substance of the guaranty and make it apply to an instrument or obligation not strictly described in the instrument of guaranty.

For plaintiff in error it is contended that the undertaking of a guarantor must be read and applied according to the strict letter or precise terms used to express it and *Wright v. Johnson*, 8, Wend. 512; *Locke v. McVean*, 33 Mich. 473; *Dobbins v. Bradley*, 17 Wend. 422, and many other cases are cited.

The rule seems to be well settled by the authority of the cases cited, that, where one enters into an obligation to guarantee notes, bonds or other obligations to be made by another, where the instrument guaranteed is not in existence but is afterwards to be executed in determining whether such obligation afterwards executed, comes within the guaranty, the courts will hold to a strict construction upon which he is sought to be held accords with the strict letter and precise terms of his guaranty. The undertaking must be such as he agreed to be liable for, as, if a guarantor binds himself to be liable for notes to be given and drawn, payable at four months, he will not be held upon notes drawn payable at six months; or if he guarantees to become security upon an undertaking to be entered into by another, and such guaranty specifies the terms of such undertaking as to time, or place of payment; the rate of interest to be paid or other conditions, then to hold him upon such undertaking, it must be shown that he is strictly within the letter of his guaranty.

It is common experience that men will often become sureties on three or four months paper, when they would not if the paper were drawn at six months, or that they will undertake to guarantee payment at one bank or in one city, when they would not undertake the payment in another bank or city, or to assume responsibility, as guarantor, for the payment of one rate of interest, when they would not for another and different rate. As there are definite circumstances which mark the difference in the risk, there is always room for contingencies to enhance the risk.

This subject has been examined because, in the briefs of counsel on both sides, importance seems to be attached to it, but our impression is that the decision of the present case does not depend upon the adoption or rejection of any particular rule which ambiguous arrangements may be supposed to call forth; that in this case the arrangement speaks for itself. The note guaranteed was in existence; it was in the hands of the guarantor. The guaranty could not relate to any other note than the one in question, or one differing in any particular in terms from the one in question. The evidence in this case shows that the defendant, McNeal, attached this note to a draft for $1,900, drawn on the Gossard Investment company, and sent the same to the National Bank of Commerce of Kansas City to have the note delivered to the Investment company upon the payment of the draft. The $1,900 was the consideration to be paid by the investment company for the note; the investment company refused to pay the draft without a guaranty for the payment of the note when it should become due.

This guaranty was made and delivered and, immediately, the draft was paid and the note turned over to the purchaser.

When this instrument of guaranty was made, we must hold that it was the same as if the note had been copied into the conditions of the guaranty. The guarantor intended to bind itself to pay this particular note if the makers should make default.

In *Curtis, et al. v. Hubbard*, 6 Met. 186, Chief Justice Shaw observed that in construing an instrument of guaranty as in the case of any other written instrument, the intent of the parties is to govern, as collected from the whole instrument and the subject matter to which it applies. In *Dobbins v. Bradley*, 17 Wend. 422, and in *Ridge v. Judson*, 24 N. Y. 64, the true rule was deemed to be that when the question is as to the meaning of the written language in which a gurantor has contracted, there is no difference between the contract of a surety and that of any other party. The view now generally received appears to be, that for the purpose of finding out what the contract is, the same course is to be pursued that the law authorizes to ascertain what the parties had agreed upon in the case of other mercantile contracts, but when an understanding is once reached of the true agreement, the rules and principles which pertain to the rights and duties of surety and principal apply so far as appropriate to the form of that relation recognized in the case of guarantor and guarantee, or admissible in view of the nature and terms of the particular transaction. (*Locke v. McVean*, 33 Mich. 480.) When the stipulations are plain on their face so far as they concern the matter in dispute there is no occasion to spend time about a rule. (*Mayer v. Isaac*, 6 M. & W. 605.)

We are of the opinion that it was not necessary to have the instrument of guaranty in this case reformed to conform in exact language with the note in relation to the matter of the date of payment of said note; and therefore that the question presented by the demurrer in this case was not necessarily involved in the case.

There is no substantial variance between the note and the guaranty; the note was not payable until five years after date except by the option of the makers. If the option had been availed of and the note paid three years after date, there would be nothing for this guaranty to operate upon. Payment of this note could not be enforced by operation of law until five years after its date. It was for the assurance of a legal obligation that this guaranty was made, therefore it was for the assurance that the note would be paid five years after date. There is scarce room for argument that there is any ambiguity between the terms of the guaranty and those of the note, much less that there is any necessity for reforming the language of the guaranty. There being no fatal nor substantial variance between the note and the instrument of guaranty, we must hold that the demurrer was rightly overruled. The determination of this proposition disposes of the questions raised in relation to the overruling of an objection to the introduction of any evidence on the trial of the cause.

II. The instrument of guaranty in this case was executed by A. W. Little, one of the partners in the firm of McNeal, Little & Thompson Banking company, who signed the firm name thereto. It is not claimed that the other partner, Joseph W. McNeal, had any knowledge that such guaranty was to be given before it was exe-

cuted or that he authorized his partner, Little, to execute the same; and it is contended by McNeal that such guaranty was never executed by the firm, and that the firm or he, McNeal, cannot be bound by the unauthorized acts of his partner, Little; the contention being that the partner, Little, was not a general agent of the firm and had no authority to bind it or his partners by such guaranty. It is conceded by plaintiff in error that a partner in a partnership of a general commercial nature, is a general agent with power to bind the co-partnership by his acts, in all matters within the general scope of the partnership business; that he may pledge or sell the partnership property, buy goods, borrow money, contract or pay debts, draw, make, endorse, accept, transfer, negotiate and procure to be discounted promissory notes, bills of exchange and other negotiable paper in the name of and on account of the partnership, but it is contended that in non-trading firms a partner does not have the power to bind the partnership and has no power, as a general rule, to contract debts and issue commercial paper; that the power of one partner to bind his co-partner rests alone upon the usage of merchants and does not amount to a rule of law in other than commercial partnerships. This contention is substantially correct. (Amer. & Eng. Enc. of Law, vol. 17, p. 994, and authorities cited.) There is no accurate definition of what is or is not a trading or non-trading or commercial or non-commercial partnership. The business of the world is conducted in such manner at the present day, that many firms are engaged in business, a part of which is commercial or trading, and a part of which is not. A partnership may be engaged in manufacture, and at the same time be engaged in

buying and selling manufactured articles, not produced by themselves. As to the business exclusively relating to manufacture, the law as to non-trading partnerships will apply, while as to the business of buying and selling the manufactures of others, the law of commercial or trading partnerships will apply. The test of the authority of one partner to bind the firm, is to be determined by whether the act is within the scope of the business in which they are engaged, as determined by the general usages of business. Courts will take judicial knowledge of the general usages of business, and will take judicial knowledge that within the general scope of the business purposes of a firm engaged in general banking, is the drawing, making, accepting, and negotiating promissory notes, bills of exchange and other negotiable paper, as also the discounting and re-discounting of commercial paper. A firm engaged in a general banking business, unless restricted by statute, is not confined merely to receiving deposits and paying the same out, and making loans, but they may purchase, discount, and re-discount; and the power of re-discounting implies and carries with it the power to guarantee the payment of undertakings re-discounted. A banking firm is a commercial partnership. A non-trading partnership is one engaged in the prosecution of some occupation or calling not of a commercial character. (17 Amer. & Eng. Enc. of Law, 887; Bates Law of Partnerships, sec. 329.) All the authorities cited, denying the power of one partner, as a general agent, to bind the concern in borrowing money and signing mercantile paper, relate to partnerships in occupation, such as attorneys, brokers, contractors to build a road, farming or planting, mining or quarrying, livery stable, print-

ing, real estate, insurance and collecting, tavern keeping, operating threshing machines, etc., and not the partnerships engaged in commercial business, like those of banking concerns. We are of the opinion that the sale of the note in question was within the general scope of the general business of plaintiff in error's banking firm; that the partner, Little, had authority, by virtue of his being a partner, to sell or re-discount said note; that such power carried with it, when necessary, the power to bind the firm by a guaranty of the payment of the note, when due; that the purchaser, having refused to purchase said notes without such guaranty, created the necessity for its execution and that the firm was bound thereby. But further, we find from the record in this case that the plaintiff in error ratified the act of his partner, Little, in making such guaranty, if such ratification was necessary. Although having a full knowledge of the execution of such guaranty, he, in no manner, attempted to disaffirm the authority of Little to execute the same, but in 1893 and 1894, long after the note had become due, default made and judgment obtained thereon, and he was being pressed to comply with the guaranty, he still did not assert that it was not the act of the firm, but sought delay on the part of the holder in its enforcement, and only asserted its invalidity after this suit had been brought. Under every rule of law, whether the concern in which he was a partner was a trading or non-trading partnership, and whether Little had or had not either legal or express authority to execute the guaranty, the conduct and acts of plaintiff in error, would be held a ratification and bind the plaintiff in error. The views herein expressed render it unnecessary that we should discuss the

assignment of error relating to the incompetency of testimony as to statements made by Little concerning the transaction and not made in the presence of plaintiff in error, holding that Little was a general agent, with authority to bind the concern by his acts, his declarations and statements concerning the same, to be competent, need not to have been made in the presence of his co-partner; they were a part of the *res jesta* and competent. The introduction of the letter press copies of letters written by defendant in error to plaintiff in error concerning the matter in question, if erroneous, could not have affected the conclusion of the court, and such error, not being substantial, would not justify disturbing the judgment.

We find no error in this record requiring a reversal of the judgment, but, as the judgment below was for the sum of $2,426.50, and the evidence shows that on April 25, 1893, the amount of the judgment of the United States circuit court, after the payment of the proceeds of the sale of the land, $1,008.60, amounted to $1,734.40 which, with interest at 12 per cent. from that date to October 23, 1895, the date when the judgment herein was rendered, would amount to the sum of $2,253.15, instead of $2,426.50, the judgment below was excessive to the amount of $173.35, and to that extent should be modified and corrected.

It is ordered that the judgment of the court below be modified by reducing the same to the sum of $2,253.15 and that, when so modified, it be in all respects affirmed.

Dale, C. J., having presided at the trial of the cause in the court below not sitting; all the other Justices concurring.