WOODSIDE v. JOHNSTON et al.

(First Division. Juneau. April 14, 1914.)

No. 1016–A.

1. INDEMNITY ⬳4—BONDS—GUARANTY—PRINCIPAL AND SURETY.

On an application to discharge a receiver because improvidently appointed, the court granted a motion to require the plaintiffs in that action (defendants in this action) to furnish a bond "for any and all damages that will result by reason of the detaining and withholding of said money in the hands of the receiver." The bond was given with surety, and the receiver was continued. On this suit on the bond brought by the defendants in the former case, the principal and surety on the bond (defendants herein) plead, first, the bond is void for want of authority in the court to exact it; and, second, the conditions of the bond have not been broken in that no court has decreed that the money was "wrongfully retained" in the hands of the receiver. *Held*, the bond was a voluntary contract, entered into by the bondsmen and surety to secure the appointment of the receiver, and is valid; the bond was given to indemnify the plaintiffs herein for their loss of interest on the money held by the receiver, and is sustained.

2. PRINCIPAL AND SURETY ⬳59—EXTENT OF LIABILITY OF SURETY.

Although, generally speaking, the surety's contract is strictissimi juris, and cannot be extended by implication, yet the rule is not permitted to go so far as to nullify on slight grounds an instrument solemnly entered into.

On January 5, 1912, Johnston and Ferris sued the executors of the estate of Woodside et al. (obligees in the bond herein sued upon), claiming ownership of a certain fund of money then in the hands of one Hurlburt, a disinterested third person not a party to that, or to this, action. Said cause was No. 886–A, files of this court.

On the same day, on an ex parte application made by said Johnston and Ferris, a receiver was appointed to take the custody of said fund. Said receiver duly qualified and took said fund from the custody of the said Hurlburt.

On January 24, 1912, defendants in said suit No. 886–A (obligees in the bond herein sued upon) moved the court therein for the discharge of the receiver on the ground that he had been improvidently appointed. This application was denied.

On February 13, 1912, defendant in said suit No. 886–A made another application. therein for the discharge of the receiver, or, in the alternative, that the court require plaintiffs in said cause to furnish a bond "for any and all damages that will result by reason of the detaining and withholding of said money in the hands of the receiver." This application, unlike the other, was based on affidavits alleging the insolvency of Johnston and Ferris, who had procured the appointment of the receiver.

The action of the court in this motion does not appear in any written order or journal entry in the case. But there can be no doubt that the order was granted substantially as asked for; to that effect was the testimony of Judge Winn—uncontradicted—and, irrespective of such testimony, the granting of the order is apparent from the recitals in the order made in said cause denying the motion to discharge the receiver, which said order is dated April 8, 1912, and is as follows:

"A motion having been heretofore filed herein by the defendants to discharge the receiver and have the money in his hands paid over to the executors of the estate of John W. Woodside, deceased, or to compel the plaintiffs to give an indemnifying bond to indemnify the executors against any loss by reason of the appointment of the said receiver and the tying up of the funds in his hands.

"And the court ordered that said bond be given, which said bond is filed herein, with C. W. Young as surety thereon, and the executors having filed objections thereto, and the same having been heard by the court, and said objections overruled, and the bond being held by the court to be good and sufficient bond for the purposes indicated—to all of which rulings the executors by their attorneys except and said exception was allowed; the court thereupon overruled and denied the motion of defendant to discharge the receiver and cause him to pay over the money to said executors, to which said ruling the attorneys of said executors except, and said exception was allowed.

"Done in open court this 8th day of April, 1912.

"Thomas R. Lyons, Judge."

On the 30th day of March, 1912, said Johnston and Ferris, for the purpose of having retained the receiver heretofore appointed at their instance, on the ex parte proceeding aforesaid, elected to perform the alternative mentioned in said order of April 8, 1912; that is to say, to meet the alternative in said order contained, they tendered and filed the bond sued upon in this action. Thereupon and thereby the receiver was retained.

That bond is as follows:

"Know all men by these presents, that John Johnston and Margaret A. Ferris, as principals, and C. W. Young, as surety, are held and firmly bound to M. F. Howe, George D. Woodside, and B. A. Hazel, as executors of the estate of John W. Woodside, deceased, and George D. Woodside individually, the defendants herein, in the sum of eight hundred ($800) dollars, for the payment of which, well and truly to be made, we bind ourselves, our heirs and executors, firmly by these presents.

"The condition of the above obligation is such that whereas, the above-named John Johnston and Margaret A. Ferris, as plaintiffs, have commenced an action against the above-named M. F. Howe, George D. Woodside, and B. A. Hazel, as executors of the estate of John W. Woodside, deceased, and George D. Woodside individually, as defendants, in the District Court for the District of Alaska, Division No. 1, which said action is now pending therein; and whereas, one Guy McNaughton was appointed as receiver in said action, who subsequent to his appointment took the oath as by law required, and as such receiver has possession of ten thousand ($10,000) dollars, to hold the same pending this suit:

"Now, therefore, if such appointment of such receiver was properly or rightfully made, or if wrongfully made, or without sufficient cause, the plaintiffs shall pay to the defendants or to such of the defendants as the court shall decree to be entitled thereto, the interest at the rate of 8 per cent. per annum, on the money in the hands of the receiver during the time that the same was wrongfully retained, if the court should decree that the same was wrongfully retained, then this obligation to be void; otherwise, to be in full force and effect.

John Johnston. [Seal.]

"Margaret A. Ferris. [Seal.]

"C. W. Young. [Seal.]"

On the 8th day of April, 1912, the defendants in 886–A, plaintiffs herein, had filed certain objections to said bond as not conforming to the order of the court—that is to say, said defendants, plaintiffs herein, "object to the form and recitals in the indemnifying bond filed herein between the above-named plaintiff, in that the order of the court that was made in respect thereto was that said plaintiffs were to give a good and sufficient bond herein providing for the payment to these defendants, in case these defendants should be successful in this suit, all costs and disbursements to be taxed herein and interest on the ten thousand dollars ($10,000) now in the hands of the receiver herein, at the rate of eight per cent. (8%) per annum from the date of the appointment of said receiver, and that said bond so offered and filed herein is not conditioned as above stated, and not as the court order-

ed"; but said objections were overruled, as appears by said order of date April 8, 1912.

On the 7th day of August, 1912, cause No. 886–A came on regularly for trial and terminated in a decree, adjudging:

"(1) That one Guy McNaughton was heretofore, on application of the above-named plaintiffs, appointed receiver herein, and by virtue of said appointment has in his possession the sum of ten thousand dollars ($10,000), the money and funds belonging to and owned by the estate of John W. Woodside, deceased.

"(2) That said McNaughton pay over said sum to Winn & Burton, attorneys for the above-named defendants, for the use and benefit of said estate of said Woodside, deceased, and that the plaintiffs herein take nothing herein as against any of said defendants."

The receiver duly paid over said money, without any interest.

Said obligees in the bond, plaintiffs herein, then commenced this action on the bond to recover the sum of four hundred and sixty-four dollars ($464) being the interest on the money in the hands of the receiver from February 13, 1912 (the date when the receiver took possession of the funds) until August 7, 1912, when he surrendered the fund to the said defendants (plaintiffs herein).

All the defendants joined in an answer, admitting the execution of the bond, but pleading that the conditions thereof had not been broken.

At the trial hereof the plaintiffs introduced all the records and files in cause No. 886–A for the purpose of showing thereby the circumstances under which said bond was given and the object and purpose of said bond.

Winn & Burton, of Juneau, for plaintiff.

Hellenthal & Hellenthal, of Juneau, for defendants.

JENNINGS, District Judge. The gist of the contention of defendants may be summed up in the following propositions advanced by them: (1) The bond is void for want of authority in the court to exact it; (2) even if the bond be valid, yet the conditions thereof have not been broken, in that the money was not in fact "wrongfully retained," and in that no court has ever decreed that the money was "wrongfully retained."

As to the first proposition, to wit, that the bond is void for want of power in the court to exact it, I think it is sufficient

to say that the court has not exacted any bond. The court has simply said: "Unless plaintiff [in 886–A] does give a bond, the receiver will be discharged." The choice is left with the plaintiffs in that case. They may or may not give a bond, as they please; there is no compulsion about the giving of this bond. As well say that a bond in attachment is exacted because no attachment can issue without a bond, as to say that this bond was exacted, because the court said: "I will discharge the receiver unless a bond be given."

The appointment and discharge of receivers are matters within the sound discretion of the court. If the court should decide that a sound discretion dictates that a receiver should not be appointed, or that (having appointed a receiver) the receiver appointed will be discharged, unless the party desiring or opposing such action, as the case may be, gives a bond to protect the adverse party, the court's power to grant or withhold the action requested on condition of the giving of such bond is not doubted. In cause 886–A the receiver had been appointed on an ex parte application without any showing either as to the solvency or insolvency of the persons asking for the appointment, and without any bond from them having been required; but, after the appearance of the defendants in said cause, and on the filing by them of an affidavit alleging the insolvency of the plaintiffs in said action, the court, in effect, decided to discharge the receiver, unless the plaintiffs in that action should give a bond to indemnify the defendants in that action. Plaintiffs elected to give the bond rather than have the receiver discharged; they gave the bond, and in this way secured the retention of the receiver. They gave the bond for the purpose of complying with the conditions imposed by the court. That was the object and purpose of the bond. That was what was contemplated by the parties when they filed and tendered the bond, and on that understanding and in that contemplation the court approved the bond. It was only by complying with the terms imposed that they secured favorable action by the court. Having secured that favorable action by the giving of the bond, they cannot now be allowed to repudiate the bond. They are forever estopped to dispute its validity. To hold otherwise would be to allow men to play fast and loose with their solemn obligations, and it would be for the court to aid

in the discrediting of the very guaranty on which it acted, and which led it to do that which it otherwise would not have done; and this, too, to the prejudice of a suitor at its tribunal.

The bond was voluntarily entered into, there was a good consideration, it was not against a statute or public policy, and it must be held to be a good and valid bond. 4 Elliott on Contracts, § 3503, and cases cited.

Now, what does the bond mean? A bond is nothing but a contract; like any contract, it is to be construed so as to get to the meaning and intent. 32 Cyc. p. 750 et seq. The words used must have a reasonable and sensible construction. The meaning is not necessarily to be restricted to the literal terms used, but is to be gathered from all the facts and circumstances. The bond is conditioned that:

"The plaintiffs shall pay to the defendants the interest at the rate of eight per cent. (8%) per annum on the money in the hands of the receiver during the time the same was wrongfully retained, if the court should decree that the same was wrongfully retained."

The meaning of the bond turns on the meaning of the words "wrongfully retained."

Defendants herein contend that the retention of the money by the receiver was not "wrongful," and that, as no court had decreed that the money was "wrongfully retained," therefore the conditions of the bond have not been broken. This is a narrow construction of the words. This is a "sticking in the bark." This is a construction of the word "wrongful" as if its meaning was "unlawful." The construction which defendants herein insist on is consistent only with the theory that the bond was given to protect against the actions of the receiver; that theory is untenable, in view of the fact that the receiver had already given a bond for his actions, in view of the fact that the bond is only for interest on the money in the hands of the receiver, and in further view of the facts and circumstances attending the giving of the bond sued on. This bond was not given to protect against the receiver; the receiver's bond did that. But it was given to indemnify the defendants in 886–A against loss or damage, if it should be ultimately decided that they were entitled to the money. It was given in conformity with an order (not directly appearing in the record, but) recited in the order of April 8, 1912,

"to indemnify the executors against any loss by reason of the appointment of said receiver and the tying up of the funds in his hands." The word "wrongful," then, must be·construed as having been used in terms of the dictionary, and it must be construed from the viewpoint of the persons who should be ultimately adjudged to be the owners of the money. As to them, that is wrongful which is not rightful. If they were entitled to the money, it was not rightful that any one should deprive them of it against their will. It matters nothing to them whether they are deprived of the money by the obligors in the bond, or by a receiver appointed at the instance of those obligors. So construing the words "wrongfully retained" (and that is the just and reasonable construction of those words and the sense in which the words were used), it must become apparent that Johnson and Ferris, the principals in the bond, certainly cannot escape liability.

Nor is defendant Young, although a surety only, in any position to contend for any other construction of the words "wrongfully retained."

Although, generally speaking, the surety's contract is strictissimi juris, and cannot be extended by implication, yet the rule is not permitted to go so far as to nullify on slight grounds an instrument solemnly entered into.

As said by the Supreme Court of California in Sather Banking Co. v. Briggs Co., 138 Cal. 730, 72 Pac. 354:

"While it is true that a surety cannot be held beyond the express terms of his contract, yet, in interpreting the terms of a contract of suretyship, the same rules are to be observed as in the case of other contracts. Such construction does not mean that words are to be distorted out of their natural meaning, or that, by implication, something can be read into the contract that it will not reasonably bear; but it means that the contract shall be fairly construed, with a view to effect the object for which it was given, and to accomplish the purpose for which it was designed. The old rule of strictissimi juris applies only to the extent that no implication shall be indulged in to impose a burden not clearly inferable from the language of the contract, but does not apply so as to hold that the contract shall not be reasonably interpreted as other contracts are."

And in Hill v. American Surety Co., 200 U. S. 203, 26 Sup. Ct. 170 (50 L. Ed. 437):

"And the rule which permits a surety to stand upon his strict legal rights, when applicable, does not prevent a construction of the bond with a view to determining the fair scope and meaning of the con-

tract in the light of the language used and the circumstances surrounding the parties."

For a case somewhat similar to this, see Shreffler v. Nadelhoffer, 133 Ill. 536, page 553, 25 N. E. 630, page 633, 23 Am. St. Rep. page 633, where the court says:

"There is no rule exclusively applicable to instruments of suretyship and requiring them to be in all cases interpreted with stringency and critical acumen in favor of the surety and against the creditor, and all ambiguities to be resolved to the advantage of the promisor, and every liability excluded from the operation of the instrument that can, by a strained and refined construction, be deemed outside of the agreement. In guaranties, letters of credit, and other obligations of sureties, the terms. used and the language employed are to have a reasonable interpretation, according to the intent of the parties as disclosed by the instrument, read in the light of the surrounding circumstances, and the purposes for which it was made. * * * The surety is not liable on an implied engagement, and his obligation cannot be extended, by construction or implication, beyond the * * * terms of the instrument by which he has become surety; but in such instruments the meaning of the. written language is to be ascertained in the same manner and by the same rules as in other instruments, and, when the meaning is ascertained, the effect must be given to it."

See, also, review of English and American decisions in Locke v. McVean, 33 Mich. 473. See, also, Fink v. Farmers' Bank, 178 Pa. 154, 169, 35 Atl. 636, 637, 56 Am. St. Rep. 746:

"A contract of suretyship, though only enforced according to its terms, is nevertheless nothing more than a contract, and, in construing it, the actual intention of the parties must prevail."

Defendants contend that they are not liable unless some court decrees that the money has been wrongfully retained by the receiver. It is perfectly obvious that a court, having appointed a receiver and directed him to retain the money, will not and cannot decree that the retention of the money by the receiver appointed by it is wrongful in the sense that it is unlawful. If it was in contemplation that the court might do so, what would be the sense in requiring an additional bond for the small interest on the money in the hands of the receiver, while the large principal, ten thousand dollars ($10,000), goes without any additional bond? On the other hand, the principal of $10,000 being secured to the winning party by the receiver's bond, the bond sued on was given to secure to said defendants (if they win) the interest, while the prin-

cipal lay idle in the receiver's hands, for the reason that if it should be decreed that defendants are entitled, they would have been wrongfully deprived of the use of the money if no bond for the interest had been required.

The construction contended for by defendants here cannot be sustained. Judgment will be for plaintiffs against all the defendants for the interest on ten .thousand dollars ($10,-000) from the date of the bond to the present time.