INA LIFE INSURANCE COMPANY, Appellant,

v.

BRANDYWINE ASSOCIATES, LTD., an Oklahoma limited partnership, Floyd R. Hardesty and Craig E. Stough, Appellees.

No. 71077.

Court of Appeals of Oklahoma, Division No. 1.

Oct. 16, 1990.

Jimmy Goodman and Kent A. Gilliland, Crowe & Dunlevy, P.C., Oklahoma City, for appellant.

R. Jay Chandler and Terry M. Thomas, Norman, Wohlgemuth & Thompson, Tulsa, for appellees.

## MEMORANDUM OPINION

BAILEY, Judge:

Appellant INA Life Insurance Company (Appellant or Lender) seeks review of the Trial Court's orders granting summary judgment to Appellees Hardesty and Stough (Appellees or Guarantors), holding Guarantors' obligation extinguished, and allowing payment of Guarantors' legal fees from funds held in escrow under the parties' partial settlement agreement. Herein, Lender asserts that to construe the Appellees' guaranty agreement as having been extinguished renders the Appellees' guaranty worthless *ab initio,* an absurd result, and that Guarantors may not take advantage of the discharge provisions of 12 O.S. 1981 § 686 to avoid liability. Lender also asserts error of the Trial Court in allowing payment of Guarantors' legal fees from the funds held in the escrow account, as contrary to the specific terms of the settlement agreement.

Appellee Brandywine Associates, Ltd. (Borrower), desirous of building an apartment complex in Tulsa, Oklahoma, sought a $6,100,000.00 loan therefor from Lender. To induce Lender to make the loan, Guarantors, at the time of execution of the note and mortgage, executed a "Guaranty of Note and Mortgage" (hereinafter the Guaranty) for Lender's benefit, providing, *inter alia,* Guarantors' "unconditional and absolute" guaranty of payment of all principal and interest (Paragraph 1 of the Guaranty), waiver of presentment and demand (Paragraph 2), and waiver of defenses including the right to set-off (Paragraph 3), but "limiting" Guarantors' ultimate liability by the following language:

> Notwithstanding any other provision herein, including the provisions of Paragraph 1 herein, this Guaranty is limited to all principal indebtedness on said Note and Mortgage and any other documents securing the Note over and above $4,880,000.00.

Borrower fell in default, and Lender commenced the instant action for appointment of receiver, collection of the note, and

foreclosure of the mortgage. Lender also sought judgment against Guarantors in the sum of $1,220,000.00, representing the difference between the principal amount of the note due, $6,100,000.00, and the amount set forth in the limitation clause of the Guaranty Agreement quoted above, $4,880,000.00. The Trial Court granted a judgment *in rem* against the property, and directed the property sold at sheriff's sale. Lender, as high bidder, bought the property at judicial sale for $4,144,000.00.

Lender thereafter sought a deficiency judgment against Borrower, to which Borrower objected as contrary to the note and mortgage, which specifically limited the amount of deficiency to the amount of income from apartment rents received after default. In lieu of appointment of receiver to collect the rents, the parties entered an "Agreed Order," thereafter approved by the Court, which provided that Borrower would collect post-default rental payments and deposit the sums collected into an escrow account, to wit:

> All monies generated by the apartment project in excess of the necessary reasonable operating expenses will be placed into an interest bearing escrow account as they are received. The existing accumulations of net operating income from the project, and the monies placed into the account hereafter are not to be withdrawn or expended by any party except pursuant to the final judgment entered by this court determining the rights of the parties to those funds, by further order of the court, or by agreement of the plaintiff in the defense of this action.

However, without consent of Lender, Borrower and Guarantors used a portion of the escrow funds to pay legal fees incurred in defense of the action. Lender then filed its motion to enforce the Agreed Order, objecting to Borrower's use of the escrow monies for payment of Borrower's legal fees as contrary to the Agreed Order. The Trial Court denied Lender's motion to enforce.

The Trial Court subsequently determined a deficiency on Lender's judgment remained in the sum of $1,956,000.00 (the difference between the $6,100,000.00 principal debt and the $4,144,000.00 received at sheriff's sale). The Trial Court granted Lender a deficiency judgment against Borrower for about $506,000.00 (as determined under the note and mortgage provisions governing deficiencies). However, and without specific findings of fact or conclusions of law, the Trial Court also determined that Guarantors' obligation under the Guaranty Agreement had been extinguished.

Lender then commenced the instant appeal, seeking review of the Trial Court's rulings on liability under the Guaranty and allowing use of the escrow funds for payment of Appellees' legal fees. Appellees counter-appealed as to the Trial Court's determination of deficiency against Borrower. Upon apparent settlement of the issue relating to the deficiency judgment, Appellees moved to dismiss the counter-appeal, which the Supreme Court granted.

On appeal in its first proposition of error, Lender asserts the Trial Court's unexplained ruling, finding Guarantor's obligation under the Guaranty extinguished, is contrary to the express terms of the Guaranty and contrary to rules of construction governing guaranty agreements generally. In its second proposition, Lender asserts that Guarantors may not take advantage of the discharge provisions of Oklahoma's "anti-deficiency" statute, 12 O.S. § 686. In its third proposition, and assuming Guarantors may, in fact, benefit from the discharge provisions of § 686, there nevertheless remains a principal indebtedness for which Guarantors are liable. In its fourth proposition, Lender attacks the Trial Court's ruling allowing Appellees to use a portion of the escrow monies collected under the Agreed Order for payment of Appellees' legal expenses incurred in the instant action. We begin our analysis by examination of relevant statutory and decisional law affecting the "complex tripartite relationship of guarantor/debtor/creditor [and] the rights under a guaranty agreement." *Riverside Nat'l. Bank v. Manolakis*, 613 P.2d 438, 441 (Okl.1980).

■ As a general matter, contracts of guaranty are to be construed under the same rules as contracts generally. *McNeal v. Gossard,* 6 Okl. 363, 50 P. 159 (1897). As with contracts generally, where the language of the guaranty is clear and explicit, the purpose thereof must be ascertained therefrom, without resort to extrinsic evidence. *Rucker v. Republic Supply Co.,* 415 P.2d 951 (Okl.1966). As previously noted by Justice Opala:

> ... A guarantor's undertaking ... creates a collateral obligation independent and separately enforceable from that of the principal debtor. The debtor need not be and frequently is not a party to the guaranty agreement. Nor need the guarantor be a party to the principal obligation. The obligation of a guaranty is contractual, and the inquiry must, in each case, focus on the precise terms of the guarantor's undertaking—the dimension or breadth of the promise. Oklahoma has long recognized the independent nature of the guarantor's obligation. ... .

*Riverside Nat'l. Bank,* 613 P.2d at 441. Therefore, effect must be given to each part of the contract, so as to make the contract operative and of real meaning. 15 O.S.1981 §§ 157, 159. The intent of the parties to a guaranty contract controls. 15 O.S.1981 § 152; *Rucker,* 415 P.2d at 953. In construing a guaranty contract to determine the intent of the parties thereto, the contract should be construed most strongly against the guarantor and in favor of the creditor. *Riverside Nat'l. Bank,* 613 P.2d at 442; *Rucker,* 415 P.2d at 954. But cf., *Federal Deposit Ins. Corp. v. B.A.S., Inc.,* 735 P.2d 358 (Okl.App.1987) (ambiguity in guaranty agreement construed against

creditor bank, which prepared the agreement, and creditor bank's successor, FDIC).

■ Thus, a guarantor's liability under a guaranty agreement may be unconditional or limited, continuing or fixed. 15 O.S.1981 §§ 331, 333, 334, 336.[1] Under some circumstances, "the acceptance, by a creditor, of anything in partial satisfaction of an obligation, reduces the obligation of the guarantor, in the same measure as that of a principal." 15 O.S.1981 § 341. In that regard, Section 686 of Title Twelve also provides in pertinent part:

> In any action ... other than to foreclose a mortgage, to recover a judgment for any indebtedness secured by a mortgage on real property ... against any person ... directly or indirectly or contingently liable therefor, any party against whom a money judgment is demanded, shall be entitled to setoff the fair and reasonable market value of the mortgaged property less the amounts owing on prior liens and encumbrances.

12 O.S.1981 § 686.

As related to the case at hand, however, we find only two prior decisions of our Supreme Court which address the effect of § 686 on contracts of guaranty. See, *Apache Lanes, Inc. v. Nat'l. Educators Life Ins. Co.,* 529 P.2d 984 (Okl.1975); *Riverside Nat'l. Bank,* 613 P.2d at 440–442. In *Apache Lanes, Inc.,* creditor foreclosed its mortgage and the security sold at sheriff's sale, leaving a shortage on which creditor did not seek a deficiency judgment. Five years later, creditor sought recovery of the shortage against guarantors. The Supreme Court recognized that, generally,

---

**1.** Those sections provide:

A guaranty is to be deemed unconditional unless its terms import some condition precedent to the liability of the guarantor.
15 O.S.1981 § 331.

Where one guarantees a conditional obligation, his liability is commensurate with that of the principal, and he is not entitled to notice of the default of the principal, unless he is unable, by the exercise of reasonable diligence, to acquire information of such default, and the creditor has actual notice thereof.
15 O.S.1981 § 333.

The obligation of a guarantor must be neither larger in amount, nor in other respects more burdensome to than that of the principal; and if, in its terms it exceeds it, it is reducible in proportion to the principal obligation.
15 O.S.1981 § 334.

A guaranty relating to future liability of the principal, under successive transactions, which either continues his liability, or from time to time renews it after it has been satisfied, is called a continuing guaranty.
15 O.S.1981 § 336.

a guarantor is not discharged from the obligation because an action against the debtor is barred, that an action to recover on a guaranty cannot be defended on the ground that the claim against the debtor is barred by the statute of limitation, and that a guarantor is not exonerated from performance under 15 O.S.1981 § 344,[2] even where debtor's obligation has been discharged by operation of law, "absent the intervention or omission of the creditor." *Apache Lanes, Inc.*, 529 P.2d at 986. Finding that creditor had failed to timely seek a deficiency judgment against debtor, and further finding that § 686 thereafter operated to fully satisfy the original debt, the Supreme Court held that creditor's failure to pursue deficiency against the debtor amounted to an alteration and impairment of the original debt and guarantor's remedy against the debtor, discharging the guarantor under 15 O.S.1981 § 338.[3] *Apache Lanes, Inc.*, 529 P.2d at 986–987. But cf., *First City Bank, N.A. v. Air Capitol Aircraft Sales, Inc.*, 820 F.2d 1127 (10th Cir.1987) (guarantor under continuing guaranty agreement not discharged by operation of 15 O.S.1981 § 338 on account of creditor's impairment of collateral.)

Conversely, however, in *Riverside Nat'l. Bank*, the Supreme Court declined to allow discharge of the guarantor under § 686. In *Riverside*, a bank creditor, as second mortgagee, sought foreclosure of its mortgage and obtained judgment. The property sold in an amount insufficient to fulfill the first mortgage, leaving the bank creditor/second mortgagee without any satisfaction whatsoever, but bank did not seek a deficiency judgment. Bank creditor subsequently sought recovery against guarantors. As we previously noted herein, our Supreme Court recognized that contracts of guaranty are governed by specific statutory provisions wholly different, separate and apart from the law governing the debtor/creditor relationship, that § 686 discharge of the debtor does not automatically serve to discharge the guarantor's obligation, and that the question of whether the obligation of the guarantor survives § 686 discharge of the debtor must be determined from the terms of the guaranty contract. *Riverside Nat'l. Bank*, 613 P.2d at 440–441. In distinguishing the guaranty agreement involved in the *Apache Lanes, Inc.* case ("a two-sentence guaranty contract limiting [guarantors'] individual liability to a designated amount"), the Supreme Court held the terms of the *Riverside Nat'l. Bank* guaranty "broad enough to deprive guarantor of his [15 O.S.] § 344 defenses and [to] prevent [guarantor's] exoneration by operation of § 344 through the bank's 'omission' in procuring a deficiency judgment," and reversed summary judgment for guarantor. *Riverside Nat'l. Bank*, 613 P.2d at 441, 442.

■ Under these authorities, and the facts and circumstances of this case, we find the Trial Court erred in holding Guarantors' liability under the Guaranty extinguished for a number of reasons. First, we hold that § 686, applicable only to the debtor/creditor relationship, and not to the "more complex, tripartite relationship of guarantor/debtor/creditor," neither inures to the benefit of Guarantors, nor automatically exonerates Guarantors from their contractual obligation absent "intervention or omission" by creditor, of which we find none. 15 O.S.1971 §§ 338, 344; *Apache Lanes, Inc.*, 529 P.2d at 986–987; *Riverside Nat'l. Bank*, 613 P.2d at 441. Second, we believe and hold that Guarantors' unequivocal waiver of the right to setoff "is alone broad enough to deprive [G]uarantor[s] of [their § 686] defenses," if any they had. *Riverside Nat'l. Bank*, 613 P.2d

---

**2.** That section provides:

A guarantor is not exonerated by the discharge of his principal by operation of law, without the intervention or omission of the creditor.
15 O.S.1981 § 344.

**3.** That section provides:

A guarantor is exonerated, except so far as he may be indemnified by the principal, if by any act of the creditor, without the consent of the guarantor, the original obligation of the principal is altered in any respect, or the remedies or rights of the creditor against the principal, in respect thereto, in any way impaired or suspended.
15 O.S.1981 § 338.

at 442. Third, were we to ascribe to the above-quoted limitation the construction urged by Guarantors, Guarantors would be absolved of *any* liability under the Guaranty so long as the property brought more than $1,220,000.00 at judicial sale, because any sale price received over $1.22 million would necessarily reduce the principal indebtedness, $6.1 million, below the $4.88 million limitation. Such a construction would leave Lender, in a worst-case scenario, eighty percent (80%) under-secured *ab initio,* clearly an absurd and unreasonable result which could not have been within the contemplation of *any* of the parties at the time of execution of the Guaranty, and contrary to the established rules of construction requiring that the Guaranty be construed most strongly against Guarantors. *Riverside Nat'l. Bank,* 613 P.2d at 442; *Rucker,* 415 P.2d at 954. The order of the Trial Court holding the Guaranty extinguished is therefore untenable under any theory presented and should be reversed.

The only commercially reasonable construction of the Guaranty, in our opinion, limits Guarantors' ultimate liability to the difference between the original principal indebtedness, $6.1 million, and the $4.88 million amount set forth, that is, $1.22 million. The property sold at judicial sale for $4,144,000.00, leaving a principal balance on the note of $1,956,000.00, in excess of Guarantors' ultimate liability as we have previously determined. Under our construction of Guaranty, Guarantors therefore remain liable only to the extent of the limitation, $1.22 million. Any other construction would render the Guaranty of no effect.

■ Further, under the circumstances of this case and the express terms of the Agreed Order, we find the Trial Court erred in allowing Appellees monies accumulated in the escrow account for payment of Appellees' legal expenses. The clear and unambiguous terms of the Agreed Order expressly proscribed use of funds in excess of "necessary reasonable operating expenses" deposited in the escrow account for *any* purpose without prior approval of the court or agreement of Lender. Appellees' resistance of Lender's foreclosure action did not serve to benefit the subject property or protect the property from wrongful disposition, but served only to protect Appellees' own interest. Assuming, as argued by Appellees, that the Agreed Order placed them in the position of a *de facto* trustee/receiver, a trustee's or receiver's legal fees in such a case do not constitute a proper charge on the assets of the trust or receivership. Cf., 45 Am.Jur.2d, *Receivers,* § 275; *Brown v. Bivings,* 316 P.2d 855, 859 (Okl.1957) (receiver's attorney's fees allowed only where receiver has "faithfully served the interest of his trust, and the items of expense are proper"); accord, *McGrath v. Clift,* 198 Okl. 644, 181 P.2d 555, 558 (1947); *Sinopoulo v. Portman,* 192 Okl. 558, 137 P.2d 943, 946 (1943) (receiver's expenses incurred in preservation and protection of trust estate constitute proper first charge on the estate); *First Nat'l. Bank of Wichita Falls v. Stricklin,* 347 P.2d 652, 655–656 (Okl.1959) (attorney fees allowed to trustee only "when necessary to the proper administration, preservation and execution of the trust"). We therefore hold that Appellees' use of escrow monies for payment of Appellees' legal fees in defense of the instant action did not constitute a permitted use of the escrow monies under the express terms of the Agreed Order, and the Trial Court's ruling to the contrary should also be reversed.

The orders of the Trial Court holding Guarantors' obligation under the Guaranty extinguished and allowing payment of Appellees' legal fees from the escrow account are therefore REVERSED, and the cause REMANDED for further proceedings not inconsistent herewith.

ADAMS, P.J., concurs.

MacGUIGAN, J., not participating.