### GILKESON et al. v. CALLAHAN.

No. 8243—Opinion Filed Dec. 12, 1916.

(161 Pac. 789.)

**1. Appeal and Error—Review—Questions of Fact—Finding by Court.**

A jury case having been tried to the court without a jury, a general finding by the court in favor of one of the parties will, upon review here, be given the same weight as the verdict of a jury.

**2. Same.**

The first paragraph of the syllabus in Freeman v. Eldridge, 26 Okla. 601, 110 Pac. 1057, is adopted herein.

**3. Appeal and Error—Disposition of Cause—Affirmance—Effect of Remittitur.**

In an action for damages, where it clearly appears that the court rendered judgment for an excessive amount and the amount of the excess can be ascertained from the record, the cause will not be reversed on account of such error, provided a remittitur for the excess is filed, and when filed the judgment may be affirmed for the correct amount.

(Syllabus by Galbraith, C.)

Error from District Court, Muskogee County; Geo. C. Crump, Assigned Judge.

Action by Alice A. Callahan against John R. Gilkeson and another. Judgment for plaintiff, and defendants bring error. Affirmed upon condition.

B. B. Wheeler, for plaintiff in error Gilkeson.

White & Disney, for plaintiff in error American Surety Company.

Spencer E. Sanders and Irvin Donovan, for defendant in error.

Opinion by GALBRAITH, C. This appeal is from the judgment of the trial court in an action for damages against the contractor and the surety on the bond given to guarantee the faithful performance of a building contract. The facts are as follows:

On November 18, 1914, Gilkeson, the contractor, entered into a contract in writing with Mrs. Callahan, whereby he undertook and agreed to furnish material and to construct a dwelling house on the land of one of Mrs. Callahan's minor children, according to plans and specifications attached to the contract, for the consideration of $2,500, the payment of $1,500 of which was arranged for at that time, and the remaining $1,000 was to be paid as follows:

"That the said Alice A. Callahan, is to place in the Commercial National Bank of Muskogee, Oklahoma, the sum of $1,000 to be paid to the said John R. Gilkeson, as follows: $500 thereof to be turned over to the said John R. Gilkeson by the said Commercial National Bank when the roof of said house is finished and the remaining $500 to be paid to the said John R. Gilkeson when said house is completed, according to the plans, specifications, and blue prints referred to in this contract."

The contract further provided:

"Said house is to be built according to the plans and specifications hereto agreed upon by and between John R. Gilkeson and Alice Callahan which said plans, blueprints and specifications are made a part hereof and adopted by both parties, and said house is to be built of good, substantial material. and to be finally completed on or before the first day of February, 1915, and the said John R. Gilkeson covenants and agrees to furnish the labor and material necessary to build and

finish said house complete, and further covenants and agrees to furnish surety bond for $1,500 to protect said Alice A. Callahan from materialman, mechanics or laborers' liens, and to guarantee the completion of said house as set forth in the plans and specifications and blueprints which are signed by the parties hereto and referred to each part of this contract."

Mrs. Callahan did not deposit the $1,000 in the Commercial National Bank, contending that the contract did not require her to do so until the first $500 was payable under the contract; that is, when the roof of the house was completed. Gilkeson commenced the erection of the building, but did not complete it. On January 27, 1915, he wrote Mrs. Callahan a letter stating that he would have the house completed on the 1st day of February, 1915, and demanded that she deposit the $1,000 in the bank on or before that day. Mrs. Callahan did not deposit the money in response to this demand, and on February 1st the house was not completed, nor was the roof of the house completed, and on the 2d day of February Gilkeson abandoned the work, and afterwards Mrs. Callahan took over the work, purchasing the material, and hiring the labor, and completed the building according to the plans and specifications, at a cost of about $2,000 in addition to the $1,500 paid Gilkeson. She sued the contractor and the surety on his bond for the damages she sustained by reason of the contractor's failure to complete the building according to the contract, fixing her damages in the excess of what the building cost her above the price she agreed to pay the contractor. A jury was waived, and the cause was tried to the court. There was a finding for the plaintiff and judgment rendered in her favor against the defendants for $1,376.38.

It is first complained that the evidence shows that Mrs. Callahan first breached the contract by failing to deposit the $1,000 in the bank as provided by the contract, and that her failure to deposit this money was the cause of Gilkeson's refusal to complete the house as he had agreed to do, and that she cannot make her own default the basis of her right to recover in this action.

It is urged in her behalf that the contract did not stipulate when this $1,000 should be deposited in the bank, and therefore she was not required to make the deposit until the first payment, as stipulated in the contract, was due, that is, when the roof of the house was completed, and the roof was not completed when Gilkeson abandoned the building, and therefore the $500 never became due prior to the time he gave up the job, and

there was no breach of the contract on her part. It appears by the letter of the contractor under date of January 27, 1915, that he did not expect this deposit to be made in the bank at the time the building contract was signed. In this letter he only demands that it be deposited by the 1st of February, 1915. The construction of the contract was a question of law for the court. The finding of the trial court, was, in effect, that there had been no breach of the contract on the part of Mrs. Callahan at the time Gilkeson abandoned the building. No sufficient reason appears for overruling this finding and conclusion.

Again, it is complained that the judgment is contrary to law and the evidence. It is argued that it is contrary to law, inasmuch as there was evidence that the plans and specifications were changed and extra work performed and extra expenses incurred not contemplated by the contract. It was alleged in the petition that, when Mrs. Callahan took over the building, she built it according to the original plans and specifications, and that she had done and performed all the things on her part required by the contract. Whether she had done this or not, and whether the building was completed according to the plans and specifications, and the amount that it cost in excess of the contract price, were all questions of fact that were submitted to the court for determination. There is a sharp conflict in the testimony of the witnesses called on behalf of the contractor, and those called on behalf of Mrs. Callahan; but there is evidence to support the finding of the court that the building was completed according to the plans and specifications, and that the only change in the plans of the building was the substitution of one flue in place of two called for in the contract, and that this change in the plans was made before the contractor abandoned the building.

Again, it is complained that in completing the building Mrs. Callahan contracted for more expensive material than was stipulated for in the contract, and had extra work done that was not provided for in the plans and specifications, thereby adding to the cost of the building. This likewise was a question of fact, and the finding of the court thereon in favor of Mrs. Callahan is likewise supported by evidence and is binding upon this appeal.

Again, it is complained that the court erred in its calculation as to the amount of the judgment. This assignment is confessed by the defendant in error. It is conceded that the total cost of the building to Mrs. Calla-

han, including the $1,500 paid to the contractor was $3,615.98. The contract price of $2,500 deducted from this amount leaves $1,115.98, and this amount the defendant concedes should have been the amount of the judgment in the court below. The amount that the judgment exceeds this sum is therefore not supported by the evidence and is erroneous. This, however, ought not to work a reversal in this case, since the amount of the error can be definitely ascertained, and will not so operate if a remittitur for the erroneous amount included in the judgment is filed as hereafter directed. M., K. & T. R. Co. v. Johnson et al., 30 Okla. 754, 120 Pac. 1100; Farmers' & Merchants' Ins. Co. v. Cuff, 29 Okla. 106, 116 Pac. 435, 35 L. R. A. (N. S.) 892.

It is contended on behalf of the surety company that it is released from liability because of numerous changes in the plans and specifications without notice to it, which greatly increased the cost of the building.

It is sufficient to say, in reply to this argument, that, while there was a sharp conflict in the testimony as to the number of changes that were made in the plans and specifications, there was sufficient evidence to support the finding of the court that these changes were not of sufficient importance to work a release of the surety. It was stipulated in the contract that changes might be made in the plans and specifications without notice to the surety, and without affecting its liability, provided such changes did not exceed 10 per cent. of the amount of the penalty prescribed in its bond. It is not shown in the evidence that the change in the flues, constructing one in lieu of two called for in the plans, increased the cost of the building in any amount. Then this change was made before the contractor abandoned the job. It was also contended that another change was made after Mrs. Callahan took charge of the building. This is true, but it is not shown that this change in the plans added to the cost of the building.

After a careful consideration of the entire record in this cause, we are constrained to hold that there is evidence to support the finding of the court that both the contractor and the surety company are liable for the amount of the damages sustained by reason of the breach of this contract, and that this amount was $1,115.98.

If, therefore, the defendant in error will file with the clerk of the trial court a remittitur of the amount that the judgment exceeds this sum and present evidence of that fact in this court, the judgment appealed from should be affirmed, and the costs of the appeal should be equally divided between the parties.

By the Court: It is so ordered.