### CHICKASAW REFINING CO. et al. v. PRUITT.

No. 12319—Opinion Filed Oct. 23, 1923.

**1. Appeal and Error—Verdict—Sufficiency of Evidence.**

Where, in an action to recover damages, the case is tried to a jury and submitted under proper instructions given by the court, and there is any evidence reasonably tending to support the verdict, the judgment will not be set aside on appeal on the grounds of insufficiency of testimony.

**2. Same—Excessive Damages—Remittitur.**

In an action for damages, when it clearly appears that the court rendered judgment for an excessive amount, and the amount of the excess can be ascertained from the record, the cause will not be reversed on account of such error, provided a remittitur for the excess is filed, and when filed the judgment may be affirmed for the correct amount.

(Syllabus by Pinkham, C.)

Commissioners' Opinion, Division No. 5.

Error from District Court, Carter County; G. M. Barrett, Judge.

Action by M. E. Pruitt against the Ardmore Refining Company, the Chickasaw Refining Company, the Imperial Refining Company, and Cameron Refining Company to recover damages. Judgment rendered in favor of the plaintiff, against the Chickasaw Refining Company, the Imperial Refining Company, and Cameron Refining Company. Defendants bring error. Affirmed upon condition.

Johnson & McGill, for plaintiffs in error.

Mathers & Coakley, Thos. Norman, and Bass & Hardy, for defendant in error.

Opinion by PINKHAM, C. In the trial court the defendant in error was the plaintiff and the plaintiffs in error were the defendants. The parties will be referred to as they appeared in the court below.

This was an action instituted by the plaintiff in the district court of Carter county, on the 14th day of January, 1920, against the defendants, Ardmore Refining Company, the Chickasaw Refining Company, the Imperial Refining Company, and the Cameron Refining Company, for the recovery against the defendants of the sum of $9,155 damages, which the plaintiff alleges have been sustained by him by reason of the polluting of a certain stream of water, which the plaintiff alleges and states runs through a pasture used and operated by him in the pasturing of cattle and other stock during the years 1918 and 1919.

Plaintiff alleged in his amended petition that he was a lease holder of the premises described in his petition, which premises were used by him as a pasture for cattle and other stock, and that the defendants and each of them own and operate refining plants in the city of Ardmore, or near the said city, wherein and by reason of which they refined crude oil, and that certain refuse is let out and permitted to flow from said refining plants into the stream of water running from and by said refining plants of the defendant companies to and

through the pasture lands of the plaintiff, and that the defendants, by means of said refuse, have so polluted said stream of water, by means of poison substances which they allowed and permitted to flow into said stream, that it has killed and injured certain of his cattle, and that it has prevented the use of said pasture lands by the plaintiff for the purposes for which he leased the same, to his damage in the total sum of $9,155.

Plaintiff further alleged in his said amended petition, that during the years 1918 and 1919 he leased from one Louise Byrd Pruitt approximately 800 acres of land in Carter county, Okla.; that said lands were grazing lands, and a creek ran through same which furnished water for cattle pastured upon said land, and that when he leased said land the same furnished an ample supply of pure water, and was the only supply of water for his cattle and stock pastured upon said land; that he paid the sum of $1,000 for the use of said lands during said time, and pastured in said pasture 624 head of cattle and 45 horses and mules; he alleged that the defendants were engaged in refining crude petroleum, and that their refinery plants were located near the creek above mentioned during the years 1918 and 1919, and that they emptied their refuse into said creek; that the refineries were so located that the water in the creek, when polluted from said refineries, ran into and through plaintiff's pasture.

That said defendants operated their refineries independently, but that by their acts in emptying their said refuse in said creek, they jointly and concurrently poisoned and polluted plaintiff's supply of stock water.

That said water flowing into plaintiff's pasture so poisoned and polluted was unfit for use, and was the only supply for said pasture, and permanently destroyed the value of said pasture, and plaintiff was unable to use the same; that as a result of said water flowing into plaintiff's pasture, and, before plaintiff discovered the poisonous nature of said water, 23 head of plaintiff's cattle, of the value of $50 each, and one head of the value of $100, died as a result of drinking said poison water and four mules, each worth $150 died as a result of drinking said poison water, causing a total death loss of $1,850. That 600 of plaintiff's cattle lost flesh and fat by reason of drinking said water and having starved for water, and were damaged to the extent of $10 per head, or the sum of

$6 000, and 41 head of horses and mules lost flesh to the extent of $5 per head on 21 head of horses, and $10 per head on 20 head of mules, or $305; that in addition thereto the plaintiff lost the use of the pasture which was reasonably worth the sum of $1,000, making a total damage amounting to $9,155.

The Ardmore Refining Company filed an answer, which was a general denial, and the other three defendants filed their answer denying the allegations in the petition. and denying that they were guilty of any negligence, and alleging that if any damage was caused, it was caused by the contributory negligence of the plaintiff because he could have avoided the same by the use of reasonable diligence and the outlay of a small sum of money.

The case was tried before the court and jury, and resulted in a verdict for the plaintiff in the sum of $1,525 against the Chickasaw Refining Company, the Imperial Refining Company, and the Cameron Refining Company. The case was dismissed as to the Ardmore Refining Company for the reason that the evidence showed that it had been dissolved prior to the damage in question.

Upon the request of the defendants, the jury was required to answer certain questions as to the damage found, and they found that $250 of the damages was by reason of the loss of the cattle, $275 by reason of injury to cattle, and $1,000, by reason of the loss of pasture. Motion for new trial was filed. overruled, and excepted to. Judgment was rendered by the court in favor of the plaintiff and against the said defendants, the Chickasaw Refining Company, the Imperial Refining Company, and the Cameron Refining Company, on the verdict of the jury in the sum of $1,525. with interest at the rate of six per cent. per annum, from the 14th day of December. 1920, until paid, and for costs, to which judgment defendants, and each of them, excepted and gave notice of appeal; and the case comes regularly on appeal to this court.

Defendants say in their brief that:

"A number of assignments of error are set forth in the petition in error, filed herein, but in our discussion of the case, we only desire to consider the following propositions: First, the verdict and judgment against the defendants to the extent of $525 for damages to cattle, horses and mules is wholly unsupported by the evidence; second, the verdict and judgment against the defendants for $1,000 for damages to the pasture is excessive."

In the defendants' discussion of the first proposition it is contended that the verdict and judgment of $525 for damages to cattle, horses, and mules, is wholly unsupported by the evidence.

It appears that the plaintiff leased from his sister and mother, for the years 1918 and 1919, about 800 acres of land. located four or five miles below, and along a creek which flowed by the location of the refineries of the defendants.

That quantities of oil flowed down this creek and into plaintiff's pasture; that his stock drank water from the creek; that they were injured by so doing and that a number died as a result of drinking the polluted water.

The uncontradicted evidence disclosed by the record is that during the spring of 1918, before plaintiff discovered the cause of the injury to his stock, he lost five head of cattle at a minimum value of $50 per head, and the jury so found in answer to the special interrogatory on that question.

Plaintiff testified, and he was corroborated by other witnesses, that the cattle which were not killed suffered damages of $10 per head by drinking the polluted water.

The jury in answer to the special interrogatory with reference to this injury stated that plaintiff was damaged in the sum of $275 by reason of injury to cattle, horses, and mules which did not die.

In view of these disclosures in the record, we think it cannot be said that the jury's verdict is not supported by the evidence. The plaintiff testified that he discovered the cause of the damage and injury to his stock the last of March, 1918. The plaintiff testified that the oil and refuse came from all the defendants' refineries. A witness who held the position of state game warden in Carter county stated that he had visited the defendants' refineries a number of times and some kind of crude oil ran from those refineries into the creek, and that said condition existed a year and a half or two years prior to the date of the trial. Another witness stated that he had worked for the past seven years close to the defendants' refineries, and that oil and a kind of chemical stuff—caustic soda—runs all the time down the stream.

The court instructed the jury that plaintiff could not recover damages for death or injury to his cattle after the discovery of the cause of the injury, and that after that time his recovery was limited to the damage to his pasture; that they should

only consider the damage to the stock that occurred prior to the first day of April, 1918.

It is further contended by defendants in their brief that the testimony of the defendants shows that, with the exception of the Imperial Refining Company, they had not begun operations at that time; and, further, that the Imperial Refining Company did not begin refining crude oil until February, 1918, and did not use any chemicals until the last of March, 1918, and the conclusion is drawn therefrom that there is practically no evidence to show that the Imperial Refining Company polluted this stream prior to April 1, 1918.

The argument is that the testimony of the defendants is undisputed and that while it is true the plaintiff testified about oil and refuse coming down the creek from the refineries, and testified that it came from all of them, but that the time was not fixed and must be inferred to be the latter part of 1918, when all the refineries were in operation. The court instructed the jury:

"If you find that one of the defendants caused the pollution of said stream and the damages to said cattle, and the others did not, then it would be your duty to find against such defendant or defendants as you may find to have caused said pollution and such damages and injury."

It will be observed that the question of what defendants, if any, caused the injury complained of was squarely submitted to the jury, and their verdict involved a finding that the Chickasaw Refining Company, the Imperial Refining Company, and the Cameron Refining Company were all responsible for the same. There being competent evidence before the jury with reference to this question of fact, we are therefore constrained to hold that the question raised under this first proposition of the defendants cannot be sustained.

Under the second proposition, it is contended that the verdict and judgment against the defendants for $1,000 for damages to the pasture is excessive.

Plaintiff alleged in his petition that he rented this pasture for the years 1918 and 1919, from his sister for the sum of $1,000, and that the water flowing into his pasture so poisoned and polluted as to render it unfit for use, and as it was the only supply for said pasture, it permanently destroyed the value of said pasture and plaintiff was unable to use it, and that it was reasonably worth the sum of $1,000.

According to the plaintiff's pleadings, the reasonable value of this pasture was $1,000, for the two years. He pleaded that he was deprived of the entire use of the pasture during the years 1918 and 1919.

A careful examination of the plaintiff's testimony shows clearly that he had as many as 300 head of cattle in the pasture at one time during the year 1918. He testified that 50 acres was in cultivation; he further testified that he was deprived of the use of about one-half of the pasture in 1918. If the reasonable value of the pasture for two years was $1,000, as alleged in his petition, it is evident that the damage for one-half of the same during the year 1918 would not exceed $250.

The record further discloses that in 1919 the plaintiff had about one-half of the pasture fenced off from the creek and that this half contained about 300 acres of prairie land, and that he used the other half, which was to a great extent woods pasture, whenever it rained, and there was plenty of water in the pasture: so that he was not deprived of half of the pasture for the year 1919. Furthermore, the evidence disclosed without dispute that he cultivated 50 acres of the land within the pasture during both the years 1918 and 1919.

Under the pleadings the damage to the pasture did not exceed $500.

It is true the plaintiff on redirect examination stated that the reasonable rental value of the pasture during the year 1918 was about $2,000, but the testimony was in direct conflict with the averment of his petition and was an attempt to change the issues established by the pleadings; he also stated that he had all of his stock in the pasture during 1918. A careful examination of the plaintiff's testimony with reference to the damage to his pasture leads to the conclusion that he received the benefit of the pasture to a very large extent during the years 1918 and 1919; that it was not permanently destroyed, and that he was not deprived of the use of it during those years, but on the contrary that he made use of it, and pastured his stock on it without any loss. We do not mean to say that the plaintiff was not damaged by reason of the pollution of water on his pasture land, caused without question by the escape of oil and refuse from the refineries of the defendant companies, but we are clearly of the opinion that in view of the undisputed facts disclosed by the record that the verdict of the jury assessing plaintiff's damages for injury to his pasture at $1,000 is excessive and is not supported by the evidence and the pleadings.

After a careful examination and consideration of the entire record, we conclude that the pleadings and evidence are suffi-

cient to support a judgment for the plaintiff against the Chickasaw Refining Company, the Imperial Refining Company, and the Cameron Refining Company, for $250 by reason of the death of cattle; for $275 by reason of injury to cattle, horses, and mules that did not die, and for $500 damages by reason of the partial loss of the use of the pasture, making a total of $1,050.

"In an action for damages where it clearly appears that the court rendered judgment for an excessive amount and the amount of the excess can be ascertained from the record, the cause will not be reversed on account of such error, provided, a remittitur for the excess is filed. and when filed the judgment may be affirmed for the correct amount." Gilkerson et al. v. Callahan, 62 Okla. 45, 161 Pac. 780.

If therefore, the plaintiff will file with the clerk of the trial court a remittitur of the amount that the judgment exceeds this sum, and present evidence of that fact in this court, the judgment appealed from should be affirmed.

By the Court: It is so ordered.