## Stuard's Estate

*P. Nicholson Wood*, for claimant.
*Rowland C. Evans*, contra.

HENDERSON, J.—The testator died on June 13, 1931, leaving a will dated September 6, 1918, duly admitted to probate, whereby, after directing the payment of his debts and funeral expenses, he gave the residue of his estate to his wife, Bess M. Stuard, and appointed her executrix. ...

A claim was presented by Dr. John F. Coultes in the sum of $131, for dental services rendered to the decedent from February 6, 1929, to April 16, 1929. The claimant testified that his record of original entries was made by him at the times the work was performed, on separate cards for each patient, showing the dates of each operation and the amounts charged therefor. The cards were produced, identified and offered in evidence, showing the account of this decedent. These cards were in the form of an alphabetical index, used for all his patients. The claimant was not permitted to testify any further.

I am of opinion that these cards are admissible and amply prove the claim. The law on this subject is in a state of flux and is being adapted to meet modern methods of bookkeeping. The later cases recognize this condition: Oswald Machinery Co. v. Farnsworth & Ebert, 101 Pa. Superior Ct. 506 (1930).

Loose leaves, from regular systems, kept in the ordinary course of business are now regarded as books of original entry.

In 22 C. J. 870, it is said:

"In view of the growth in modern times of the system of using 'loose-leaf' books of account, it would seem clear that leaves from such books should be competent, and they are held to be so.

"A card index record has been held to be admissible when duly authenticated." Citing Haley & Lang Co. v. Del Vecchio, 36 S. D. 64, which expressly holds that to prove an account between a jobber and a retailer, the record on a card index is admissible where it constitutes the original, permanent, and only record of the account kept by the jobber, and is properly authenticated.

An annotation in L. R. A. 1916B, 634, 635, states:

"The general rule that a party's own books of original entries made in the ordinary course of business, and contemporaneous to the transactions to which they relate, if properly authenticated, are admissible has, notwith-

standing the facility which such systems of accounts afford for fraud, been generally held to include card index or loose-leaf systems of accounts, such forms being regarded as books within the meaning of the rule. Such admission is upon the theory that the substance, and not the form determines the admissibility or nonadmissibility of the matter." . . .

But I am not compelled to rely wholly upon these cards of original entry. The decedent had been introduced to this dentist by Miss Supiot. This fact is shown by the dentist's card record and was testified to by her. She evidently felt a moral responsibility to see that the dentist was paid. On several occasions she asked him if he had paid this bill and the last time, within two months of his death, the decedent again promised to do so and said he owed this claimant about $125.

I have reached the conclusion that the claim should be allowed in the sum of $131 with interest at six percent from April 16, 1929, and it is so ordered. . . .