**MANEY et al. v. CHERRY.**

No. 23998. Feb. 5, 1935.

Twyford & Smith and G. Lee Gibbs, for plaintiffs in error.

F. Leonard Sibel, for defendant in error.

PER CURIAM. The facts of the case follow, the parties being referred to as they appeared in the trial court.

The plaintiff is a retail merchant; the defendants are general road contractors. On May 26, 1930, the defendants made and delivered to the plaintiff their written agreement, by which they guaranteed payment for certain goods to be delivered to their subcontractors, who are designated therein as Storie Brothers. The terms of this guaranty, omitting caption and signature, are as follows:

"We will pay the properly signed tickets for feed you may furnish Storie Brothers for their use on project No. 137, Lincoln county. Please send these tickets in to us immediately when purchases are made."

Pursuant to this guaranty, the plaintiff delivered merchandise to Storie Brothers, aggregating $1,024.54 in value. Although the guaranty was confined to "feed," certain items of the account consisted of groceries, clothing, tobacco, hardware, and general supplies. The defendant alleges the total value of such items to be $277.39.

On July 24, 1930, the defendants executed and delivered to the plaintiff a second agreement by which they guaranteed payment for certain goods to be delivered to a second subcontractor, W. T. Robinson. The terms of this guaranty, omitting caption and signature, are as follows:

"We will get you a check out in the next few days. As to Mr. Robinson, we told him to go to you for supplies and you will find him a nice man to deal with, and we will see that you get your money for feed and supplies that you furnish him."

Under this agreement the plaintiff delivered merchandise to W. T. Robinson of the value of $2,033.47. Of this amount the defendants contend that items of the value of $255 were delivered prior to the date of the guaranty.

The defendants made certain payments to the plaintiff on the above-described accounts, some of which payments were made on each account separately and others on the two accounts jointly. After such payments, a balance of $1,000 on the joint account remained unpaid, for which amount the plaintiff asked judgment. The jury rendered its verdict for the plaintiff for the latter amount in full.

The defendants, as plaintiffs in error here, have assigned three errors. These will be considered in the order in which they were presented in the brief.

1. To prove the items of account, the plaintiff introduced the original sales tickets which were made at the time of each sale. The evidence showed that these tickets were the first record made of each transaction, that they were of a regular and permanent character, and that they were made in the usual course of business.

Section 653, C. O. S. 1921 (sec. 336, O. S. 1931), reads as follows:

"Entries in books of account may be admitted in evidence, when it is made to appear by the oath of the person who made

the entries, that such entries are correct and were made at or near the time of the transaction to which they relate, or upon proof of the handwriting of the person who made the entries in case of his death, or absence from the county, or upon proof that same were made in the usual course of business."

The above-quoted statute was construed in Jones v. Sinclair Crude Oil Purchasing Co., 130 Okla. 182, 266 P. 439, in which this court said:

"Objection is made that the intervener's book accounts were not properly admitted in evidence, but we hold, under sec. 653, C. O. S. 1921, the entries having been made in the usual course of business, the trial court did not abuse its discretion in admitting them. * * * 'Entries in books of accounts are admissible in evidence upon proof that they were made in the usual course of business of the person, firm or corporation whose acts are in question'."

We think that the plain language of the statute, as construed in that case, is controlling here.

The defendants' objection that the sales tickets are not "books" within the meaning of the statute is without merit. Under modern bookkeeping practices, loose-card and loose-leaf systems have largely supplanted the earlier use of bound volumes. Entries on such loose leaves or cards are just as truly "entries in books of account," within the meaning of the statute, as though the leaves were bound into a volume. This view is supported in 22 C. J. 870, which states:

"In view of the growth in modern times of the system of using 'loose-leaf' books of account, it would seem clear that leaves from such books should be competent, and they are held to be so.

"A card index record has been held to be admissible when duly authenticated.

"Shop cards kept by employees to show the time worked during a particular day are admissible when the employees have no independent recollection of the subject-matter of such cards."

The foregoing rules are in conformity with the spirit of an authoritative declaration by Wigmore in his text on Evidence, in section 1530 thereof:

"* * * It would seem -that expedients which the entire commercial world recognizes as safe could be sanctioned, and not discredited, by courts of justice. When it is a mere question of whether provisional confidence can be placed in a certain class of statements, there cannot profitably and sensibly be one rule for the business world and another for the courtroom. The merchant and the manufacturer must not be turned away remediless because methods in which the entire community places a just confidence are a little difficult to reconcile with technical judicial scruples on the part of the same persons who, as attorneys, have already employed and relied upon the same methods. In short, courts must here cease to be pedantic and endeavor to be practical."

The mere fact that the sales tickets in this case were not in book form cannot, therefore, place them outside of the provisions of the statute.

Nor does the case of Navarre v. Honea, 41 Okla. 480, 139 P. 310, conflict with our holding in the present case. The issue in that case was not whether sales tickets were admissible, but whether a daybook, which had been copied from such tickets, was competent. It appeared in that case that the tickets could not be produced, and hence the court assumed that they were of a temporary character, and that the daybook was the first permanent record. The facts in the present case are just the opposite. The sales tickets are here presented in permanent form as the first regular entries of the plaintiff's bookkeeping system, and, as the evidence is clear that they were made in the usual course of business, we regard them as thoroughly competent under the terms of the foregoing statute.

These tickets are, in fact, of more than ordinary competency in the present case, as the defendants, in their written guaranty, agreed to "pay the properly signed tickets," and the trial court did not commit error in receiving them.

2. The second contention of defendants is that the trial court erred in giving the second paragraph of the following instruction:

"No. 6. In case you should find that the defendants herein are liable for a portion of said indebtedness, and are not liable for other portions thereof, then and under such circumstances it would be your duty to return a verdict in favor of the plaintiff in such an amount as you find to be due the plaintiff after deducting any item or items which you may find from the evidence the defendants herein did not agree to pay for, in accordance with the terms of the written guaranties.

"In this connection, however, you are told that the terms of the written guaranty, being somewhat ambiguous, you are at liberty to take into consideration, in determining the intention of the parties with reference thereto, all the facts and circumstances appearing in evidence which would aid you in arriving at what the parties intended when they executed the written guaranties."

The defendants complain that by reason of the aforesaid instruction, the jury awarded the plaintiff $277.39 under the guaranty as to Storie Brothers for items consisting of groceries, tobacco, hardware, and clothing, whereas the terms of the guaranty were confined to "feed" only.

Contracts of guaranty are like any other written agreement, in that parol evidence is not admissible to vary or add to the terms thereof in the absence of fraud, accident, or mistake.

In McNeal v. Gossard, 6 Okla. 363, 50 P. 159, this court said:

"In Dobbin v. Bradley, 17 Wend. 422, and in Rindge v. Judson, 24 N. Y. 64, the true rule was deemed to be that, when the question is as to the meaning of the written language in which a guarantor has contracted, there is no difference between the contract of a surety and that of any other party. The view now generally received appears to be that for the purpose of finding out what the contract is, the same course is to be pursued that the law authorizes to ascertain what the parties had agreed upon in the case of other mercantile contracts, but, when an understanding is once reached of the true agreement, the rules and principles which pertain to the rights and duties of surety and principal apply, so far as appropriate, to the form of that relation recognized in the case of guarantor and guarantee, or admissible in view of the nature and terms of the particular transaction."

After a careful examination of the guaranty contract as to the Storie Brothers' account, we cannot perceive any ambiguity therein, nor can we agree that the use of the term "feed" in the contract would warrant the foregoing instruction.

Webster defines this word as: "An allowance of provender given to a horse, cow, etc.," or "fodder." Such definition is in accordance with the accepted and customary meaning of the term. The parties to the contract were both engaged in occupations in which the term would be frequently used, and were in a position to be familiar therewith. The plaintiff did not seek to reform the contract, nor did he offer any evidence to show that the term was understood by the parties in a different sense than its ordinary meaning.

The first paragraph of the instruction is well stated, but the second paragraph doubtless confused the jury to the defendants' prejudice, as is shown by the fact that they awarded the plaintiff recovery for items which were in no way connected with "feed."

In Lamm & Co. v. Colcord, 22 Okla. 493, 98 P. 355, this court said:

"In the case at bar the guarantor agreed to answer for the default of O. C. Scoresby. The record shows that upon this instrument of guaranty, the goods were furnished the Scoresby Tailoring Company. There is no presumption that they were one and the same. A guarantor has the right to prescribe the exact terms upon which he will enter into the obligation, and to insist upon a discharge in case those terms are not observed."

3. Although the giving of the aforesaid instruction was error, a new trial will not be ordered if the plaintiff file his remittitur for $277.39. The excessive recovery in this case can be readily ascertained from the itemized account in the record, and the defendants themselves concede in their brief that the items not covered by their guaranty as to Storie Brothers do not exceed the aforesaid amount.

This holding is in accordance with the rule that, where the trial court renders judgment for excessive damages and the amount of excess can be ascertained from the record, the damages being itemized therein, the cause will not be reversed, provided a remittitur for the excess be filed. Gilkerson v. Callahan, 62 Okla. 45, 161 P. 789; Muskogee Electric Traction Co. v. Fore, 77 Okla. 234, 188 P. 327; Chickasaw Refining Co. v. Pruitt, 93 Okla. 99, 219 P. 710. The same rule is applicable to actions on account.

4. The defendants further complain that the jury was unwarranted in awarding recovery, under the W. T. Robinson guaranty, for items purchased prior to the date thereof. It appears from a careful reading of the contract, however, that the guaranty intended to cover past as well as future purchases, and it is clear that the future advances would constitute sufficient consideration for the entire agreement.

A guaranty covering past and future transactions, and supported by consideration arising out of future transactions, is good as to the whole. Gordon v. W. T. Rawleigh Co., 117 Okla. 235, 245 P. 825; writ of error dismissed and certiorari denied (1927) 48 S. Ct. 157, 275 U. S. 506, 72 L. Ed. 397; Sparkman v. W. T. Rawleigh Co., 117 Okla. 235, 245 P. 828; writ of error dismissed (1927) 47 S. Ct. 570, 273 U. S. 782, 71 L. Ed. 890; Thomason v. W. T. Rawleigh Co., 117 Okla. 239, 245 P 829; writ of error dismissed and certiorari denied (1927) 48 S. Ct. 157, 275 U. S. 506, 72 L. Ed. 397.

We think that no error was committed in this connection.

5. The third assignment of error complains that the account against the Storie

Brothers had been assigned prior to the institution of the action, and that the plaintiff is not the real party in interest.

The evidence shows that the following assignment appears on the bottom of the Storie account:

"I, J. W. Cherry, do hereby assign this acct to Richard Conover Hardware Co. of Oklahoma City for value received of them and they are authorized to collect and receipt for same. This October 18th, 1930."

The evidence fails to show, however, that this assignment was ever delivered. The plaintiff, in his brief, insists that it was not delivered, and the fact that it was in plaintiff's possession at the trial is presumptive evidence that delivery thereof was not made.

"Where the assignment is by a written instrument, simply signing or acknowledging the instrument is not sufficient to transfer the property, and delivery of the instrument is necessary to complete the assignment. So the mere indorsement of a transfer on an instrument, without proof of delivery, will not be sufficient to establish the assignment thereof. The reason is that the instrument must be made operative as in the case of any other contract." 5 C. J. 906.

We therefore hold that the assignment was not effective, and that the plaintiff is the real party in interest.

The cause will be reversed and remanded for new trial, unless plaintiff file a remittitur for $277.39, in which event the judgment is affirmed.

The Supreme Court acknowledges the aid of Attorneys Nathan S. Scarritt, C. D. Roseman, and Sam P. Ridings in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of law and facts was prepared by Mr. Scarritt and approved by Mr. Roseman and Mr. Ridings, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration, this opinion was adopted.