Argued May 27; affirmed June 17, 1947

# DOUGLAS CREDITORS ASSOCIATION, a Corporation *v.* PADELFORD

(182 P. (2d) 390)

In Banc.

*Harrison R. Winston,* of Roseburg, for appellant.

*R. L. Whipple,* of Roseburg, for respondent.

BAILEY, J.

This action was commenced on February 20, 1946, by Douglas Creditors Association, a corporation, as assignee of Dr. B. R. Shoemaker to recover from Kenneth Padelford the balance due for professional services performed by Dr. Shoemaker for defendant's wife. From a judgment in favor of plaintiff, defendant has appealed.

The complaint alleges that Dr. B. R. Shoemaker, between August 29, 1934, and December 1 of the same year, performed professional services for defendant's wife of the reasonable value of $422.35 and that no part thereof has been paid except the sum of $10 which was paid on April 10, 1940, "leaving a balance remaining due and unpaid on said account of $412.35." It further alleges the assignment of the claim to plaintiff, an Oregon corporation. Defendant denies that any payment has been made on the account and that any sum is "due or owing to plaintiff." All the other allegations of the complaint are admitted. By way of affirmative defense defendant alleges that the cause of action set forth in the complaint is barred by the provisions of subsection 1 of § 1-204, O. C. L. A., which provides that an action on a contract, other than on a sealed instrument, shall be brought within six years after the cause of action shall have accrued.

Defendant assigns as error the admission in evidence of an index card record from Dr. Shoemaker's office, relating to the Kenneth Padelford account. This was a pasteboard card, 3 x 5 inches, on which were recorded the dates and nature of professional services performed by Dr. Shoemaker for Mrs. Padelford and the reasonable value thereof, aggregating $422.35, and the following notation, "April 10, 1940, by cash $10.00."

Defendant's objection to the admission of this card was "that it is merely a self-serving declaration. There is no proper foundation made for its introduction. It is a statement that a payment was made and there is no evidence to justify the introduction of that—no testimony or background or foundation made to show a payment was made by the defendant or anyone on his behalf."

Dr. Shoemaker testified that this was the "original file card"; that most of the items written on the card were in Mrs. Shoemaker's handwriting and that she was at the time working in his office; that they were made at his direction; that these items were put down on the card each day as the services were rendered; that the sum of $10.00 "was paid and credited on" defendant's account on April 10, 1940; and that the entry, "April 10, 1940, by cash $10.00", was made by him on that date immediately after such payment. Dr. Shoemaker further testified as follows:

"Q. Doctor, do you now remember the circumstance of the payment of the $10?

"A. A matter of six years has past since that payment was made but shortly after the payment was made, I have a vivid recollection of meeting Mr. Padelford in front of the Umpqua Hotel; he stopped me and said, 'Doctor, I have paid you $10 on the account and I am going to pay $10 each month until that account is paid.' The exact circumstances of the original $10 has past from my memory. I don't remember that.

* * *

"Q. * * * Would you have put that down if the money had not been paid?

"A. I would not have put that down if the money had not been paid.

"Q. Then, can you assure this jury that because you did put it down, you are sure that the money was paid?

"A. I am absolutely satisfied that the money was paid.

\* \* \*

"Q. Now, doctor, you have said that you do not remember the exact circumstances of this payment. I take it there are probably a hundred to thousands of payments made through your office; is that what you mean?

"A. That is right.

"Q. Did you at that time have any particular reason to single this one out to remember?

"A. I did not."

On cross-examination Dr. Shoemaker gave the following testimony.

"Q. Do you know of your own knowledge whether or not Mr. Padelford made such a payment?

"A. Only by what is down on the card; it wouldn't be there if it had not been made.

"Q. Do you know whether or not someone on his behalf may have made the payment?

"A. I couldn't say; I don't know.

"Q. Did you make all the entries on that?

"A. I made none except the last one—the payment of $10 on account.

"Q. You are certain that that entry was made by you at that time?

"A. Absolutely.

"Q. You have no recollection of whether the receipt was in cash?

"A. No. I have not.

"Q. Isn't it possible that you made that entry based upon the statement that you say that you heard Mr. Padelford make—that he paid you $10? Isn't it possible that you made that entry based upon

the statement that Mr. Padelford made, according to your testimony?

"A. Mr. Padleford met me in front of the Umpqua Hotel and told me he had paid $10 on account and would continue to make $10 a month on the account until the account was paid.

"Q. But you didn't know whether he actually had or had not made the payment?

"A. If it is on the card, it must have been paid."

The admissibility in evidence of this index card record is governed to a large extent by the provisions of chapter 414, Oregon Laws 1941, known as the "Uniform Business Records as Evidence Act." Section 1 of the act provides that the term "business" shall include every kind of business, profession, occupation, calling or operation of institutions. Section 2 of the act reads as follows:

"A record of an act, condition or event, shall, in so far as relevant, be competent evidence if the custodian or other qualified witness testifies to its identity and the mode of its preparation, and if it was made in the regular course of business at or near the time of the act, condition or event, and if, in the opinion of the court, the sources of information, method and time of preparation were such as to justify its admission."

■ The foregoing statute is not limited in its application to books of account or to entries therein. It refers to a "record of an account, condition or event". Long before the "Uniform Business Records as Evidence Act" was approved by the National Conference of Commissioners on Uniform State Laws in 1936, (5 Wigmore on Evidence, 3rd Ed., 362, § 1520) the strictness of the shop book rule had been relaxed so that looseleaf books of account, card index records, shop cards, etc., in addition to bound volumes, were held to be ad-

missible when duly authenticated. 22 C. J., Evidence, 870, § 1045; 10 R. C. L., Evidence, 1178, § 376; *Haley & Lang Co., v. Del Vecchio*, 36 S. D. 64, 153 N. W. 898, 64 L. R. A., 1916B, 631. See also *Radtke v. Taylor*, 105 Or. 559, 588, 210 P. 863, 27 A. L. R. 1423. In those states where the Uniform Act has been adopted, index card records such as the one here involved are competent evidence, if authenticated in the prescribed manner and "if, in the opinion of the court, the sources of information, method and time of preparation were such as to justify" their admission. *In re Stuard's Estate*, 24 Pa. D. & C. 468; *Maney v. Cherry*, 170 Okla. 469, 41 P. (2d) 82; see also 32 C. J. S., Evidence, 561, § 685c; 20 Am. Jur., Evidence, 918, § 1068. "Under modern bookkeeping practices, loose-card and loose-leaf systems have largely supplanted the earlier use of bound volumes." *Maney v. Cherry*, supra.

■■ One of the purposes of the Uniform Act is to enlarge the operation of the business records exception to the hearsay evidence rule. The common-law exception is based on the assumption that records kept in the regular course of business usually are accurate, and may be used, in case of necessity, as evidence of the matter recorded. *Radtke v. Taylor*, supra. The exception has been, however, hedged about with so many burdensome restrictions that legislation has been necessary to make the rule more flexible. The following quotation from 5 Wigmore on Evidence, 3rd Ed., 361, § 1520, is here appropriate:

"The application of this Exception [shop book rule] had gradually developed a mass of detailed petty limitations that have no relation to the practical trustworthiness of the documents offered. Many of the statutes date from an early period when the history of the rules was not well understood,

and thus their phraseology has hampered the development of correct principle. Moreover, the judicial applications of the principle have been limited by the historical boundaries of the rules. The gross result is a mass of technicalities which serve no useful purpose in getting at the truth.

"So unreal and obstructive is this mass that the only practical solution is a re-statement of the law in the shape of a single broad and flexible rule that will safeguard fundamental requirements while corresponding to actual business usage".

Dean Wigmore then discusses the efforts which have been made, beginning in the year 1927, to have adopted in the different jurisdictions a uniform law, directed principally at the liberalization of the business records exception to the hearsay evidence rule.

Defendant contends that the index card record, with the entry of the $10.00 payment thereon, should not have been admitted in evidence for the reason that "the entrant failed to lay any foundation whatsoever that he had personal knowledge of the transaction when he made the entry and that the entry was made in conformity with such knowledge". In support of this contention he quotes the following from *Radtke v. Taylor,* supra (105 Or., at page 586): "It is not necessary that the entrant, when testifying, shall at that time have an independent recollection of the transactions entered, but he must be able to say that at the time when he made the entries he had personal knowledge of the transactions and that the entries were made correctly and in conformity with such knowledge: 2 Enc. of Evi. 634; *Merrill v. Ithaca & Owego R. R. Co.,* 16 Wend. (N. Y.) 586, 30 Am. Dec. 130."

*Radtke v. Taylor* was decided in 1922. It is a very comprehensive review of the common law relating to

the shop book rule. What is there said is no longer controlling if in conflict with the provisions of the Uniform Business Records as Evidence Act. (Ch. 414, Oregon Laws 1941).

Under the provisions of the Uniform Act a record of an act, condition or event is competent evidence: (1) If the custodian or other qualified person testifies to its identity and the mode of its preparation; (2) if it was made in the regular course of business at or near the time of the act, condition or event; and (3) if in the opinion of the court the sources of information, method and time of preparation were such as to justify its admission. In the instant case Dr. Shoemaker, who was the custodian of the index card record, testified as to its identity and the mode of its preparation. It is apparent from his testimony that the entries on this card were made in the regular course of business at or near the time the services were performed and the $10 was paid. The court admitted it in evidence and therefore in its opinion "the sources of information, method and time of preparation were such as to justify its admission."

■■ The court passes upon the admissibility of the records and the jury passes upon their weight. *Radtke v. Taylor,* supra. There is, under the provisions of the Uniform Act, considerable discretionary power vested in the trial court in determining whether "the sources of information, method and time of preparation were such as to justify" the admission of a record in evidence and a ruling thereon by the court should not be disturbed except in case of manifest abuse of discretion. In our opinion there was no such abuse.

It is not necessary to decide whether this record would have been admissible under the ruling in *Radtke*

*v. Taylor,* supra. Defendant quotes one paragraph from the opinion in that case and argues that there is no evidence that Dr. Shoemaker had any knowledge of the payment of the $10 at the time of entering it on the card record, and therefore that record was inadmissible. When that paragraph is read and considered in connection with what immediately follows and the evidence in the case, it would appear that this contention of defendant is without merit. The opinion continues:

"When the entrant appears as a witness and testifies that at the time of making the entries he had knowledge of the transactions entered and that he made entries in accordance with the truth, there is not, in the final analysis, a total lack of evidence concerning the delivery of the goods sued for. * * *

"It is not necessary, in order to make the books admissible, that some witness shall testify that he then recollects, independently of the books, that some of the articles were delivered. The admissibility of the books does not depend upon independent evidence of delivery although the lack of such independent evidence may affect the weight of the books. There are of course holdings to the contrary."

■ It is further agreed by defendant that the $10 entry on the card record was not of itself "sufficient proof of the time it was made, and to render it competent evidence, the party asserting the fact of payment must show by other evidence than that of the person making the entry that the endorsement or entry was made before the bar of the statute of limitations attached." In support of this contention he cites the following: 59 A. L. R. 908; *Harding v. Grim,* 25 Or. 506, 36 P. 634; *Alston v. State Bank,* 9 Ark. 455; *Mills v. Davis,* 113 N. Y. 243, 21 N. E. 68; *Shaffer v. Shaffer,* 41 Pa. 51.

*Shaffer v. Shaffer* was an action on a note on which there was an indorsement of a payment on May 1, 1857. There was, however, no evidence as to the time when this entry was made. The court observed: "It was in the handwriting of the plaintiff, and there was no proof that it was made at the time of its date, unless such proof was furnished by the due-bill. Endorsements made by the promissee, before the statute has closed upon the right to maintain suit, are undoubtedly evidence of corresponding payments, to remove the bar of the statute in this state, though no longer in England, but it has always been held that they are not evidence at all, unless proved to have been made while the statute was running". In *Alston v. State Bank* there was an indorsement on the back of the note as follows: "See entry, January 30th, 1845: Cr. by $95." The note had been transferred to the plaintiff bank. An officer of the bank testified that the indorsement was on the note at the time the bank received it but that he knew nothing about the makers paying anything thereon. This comprised all the evidence. The court held that there was no proof that the indorsement had been made before the action was barred by the statute of limitations and therefore it was not admissible. *Mills v. Davis* is to the same effect as the two cases last discussed.

On this feature of the case defendant has also cited 59 A. L. R. 908; also pages 906 and 915. The cases on those pages are annotated under the subhead: "Indorsement or entry made before action is barred", (p. 905) followed by this statement: "It is a general rule, followed in a majoirty of jurisdictions, that a credit indorsed or entered on a promissory note, account, or other evidence of indebtedness by the payee, holder, or creditor, before the Statute of Limitations has barred

action thereon, is admissible as evidence of a part payment on the indebtedness for the purpose of tolling the statute.''

In *Harding v. Grim,* supra, plaintiff brought an action against the administrator of an estate to recover on a promissory note executed in 1858 and payable two years after date, for which a claim had been presented to and rejected by the administrator. The defense was the statute of limitations. Plaintiff offered in evidence a note upon which were several indorsements in his handwriting indicating payments on the note, the first of such payments being in 1880. The court called attention to § 1134, Hill's Code, which provides that no claim rejected by an executor or administrator shall be allowed except upon some competent or satisfactory evidence other than the testimony of the claimant, and stated that the question before the court was whether there was any such competent or satisfactory evidence. In this connection the court said:

" * * * It is clear the indorsements alone, the first of which was made twenty years after the note became due, and long after it was barred, were not proper evidence to go to the jury. Indorsements on a promissory note, made by the promisee before it is barred by the statute, are, in some jurisdictions, held evidence of corresponding payments to remove the bar, on the ground that they are in the nature of admissions against the interest of the party making them; but it is nowhere held that such indorsements, made after the statute has run, afford any evidence whatever that the payments were made, or are competent to go to the jury as evidence of corresponding payments to remove the bar of the statute.''

None of these authorities on which defendant relies support his contention that evidence other than that

of the one making the entry is required to prove that such entry was made before the claim was barred by the statute of limitations. They do hold that the date borne by such indorsement or entry is not of itself sufficient proof of the time when it was made. In the case at bar Dr. Shoemaker testified positively that the entry of the $10 payment was made on the date appearing in the indorsement, to wit, April 10, 1940.

■ The underlying reason given for the rule that the creditor's entry of a payment, made before the indebtedness is barred by the statute, is competent evidence of part payment for the purpose of tolling the statute, is that such entry, made before the claim is barred, is against the interest of the creditor since he thereby reduces the amount of a valid demand. See annotations, 59 A. L. R. 912, et seq.

We are not concerned with the admissibility of books of account "to show the payment or loan of money". Such books, as stated by defendant, are usually held inadmissible "on the ground that inasmuch as the person paying or loaning money has it in his power to perpetuate evidence of that fact by taking a receipt or note, the reason for admitting a party's books of account as evidence in his own favor does not exist." 20 Am. Jur., Evidence, 949, § 1088; 32 C. J. S., Evidence, 569, § 687. Dr. Shoemaker was not loaning or paying money but was receiving money and a receipt given by him to the debtor would not enable him "to perpetuate evidence of that fact" which would be readily available to him.

Defendant's second assignment of error is based upon the refusal of the court to grant defendant's motion for a directed verdict. The same questions are raised under this assignment as we have discussed and disposed of in connection with the first assignment.

■ The third and last assignment is based upon the refusal of the court to give defendant's requested instruction No. 2, reading as follows:

"You are instructed that before a part payment of the debt would remove the bar of the statute of limitations, you must find it to be a payment of a portion of an admitted debt, and paid to and accepted by the creditor as such, accompanied by circumstances amounting to an absolute and unqualified acknowledgment of more being due, from which a promise may be inferred to pay the remainder. Part payment of a debt is not of itself conclusive to take the case out of the statute. In order to have that effect it must not only appear that the payment was made on account of a debt, but also on account of the debt for which the action is brought, and that the payment was made as a part of a larger indebtedness, and under such circumstances as to warrant you in finding an implied promise to pay the balance."

This requested instruction appears to have been presented on the theory that the claim was barred by the statute of limitations before the alleged payment. It is based on *Harding v. Grim,* supra, which was concerned with payments claimed to have been made long after the note was barred. In this connection defendant also cites and relies on § 1-222, O. C. L. A., which provides that "No acknowledgment or promise shall be sufficient evidence of a new or continuing contract, whereby to take the case out of the operation of this title, unless the same is contained in some writing, signed by the party to be charged thereby; but this section shall not alter the effect of any payment of principal or interest." We fail to see how this statute, or *Harding v. Grim,* has any application to the factual situation before us.

■ Plaintiff properly relies on § 1-223, O. C. L. A., which provides that whenever any payment of principal or interest has been made upon an existing contract, note, bond or other evidence of indebtedness, "if such payment be made after the same shall have become due, the limitation shall commence from the time the last payment was made." This section refers only to payments made on contracts before the statute has run against them. *Eastman v. Crary,* 131 Or. 694, 284 P. 280.

The requested instruction refers to removing "the bar of the statute of limitations". That question is not involved unless the claim was barred before the payment was made. It also states that the payment must have been made and accepted under "circumstances amounting to an absolute and unqualified acknowledgment of more being due, from which a promise may be inferred to pay the remainder." Such is not true in instances where payments have been made before the claim is barred. § 1-223, O. C. L. A. There are other objectionable matters in the requested instruction which it is unnecessary to mention. No error was committed by the court in refusing to give this instruction.

■ In our opinion the index card record containing the entry or indorsement of the payment of $10 on the account was admissible under the Uniform Business Records as Evidence Act. Chap. 414, Oregon Laws 1941. It was also admissible as evidence of a part payment on the indebtedness for the purpose of tolling the statute inasmuch as there was substantial evidence that the entry of the $10 payment was indorsed thereon by the creditor before the statute of limitations had barred action thereon.

No error having been committed by the circuit court, the judgment is affirmed.